## THE WILMINGTON COAL MINING AND MANUFACTURING COMPANY

v.

## JOHN BARR.

1. CONTRACT FOR SERVICES—CONSTRUCTION.—Appellee entered into the service of appellant under a written contract, providing, among other things, in a rule of the company, which was made a part of the contract, that "any employee wishing in good faith to leave the company's service, may do so at any time without giving previous notice." Under the provisions of this rule the right of appellee to quit appellant's employ before the expiration of his term of service is unquestioned. Language contained in another portion of the contract, "that he would not stop work," etc., cannot, in the light of the whole contract, be so construed as to make it an entire contract.

---

* For contrary opinion as to jurisdiction, see *post p.* 189.

2. QUITTING IN GOOD FAITH—EVIDENCE BEARING UPON THAT QUESTION.—The good faith of appellee in leaving the employ of the company, is presumed until the contrary is shown, yet the motive which induced him to this action is a matter to be fairly submitted to the jury, and hence the question asked a witness, whether he knew of appellee's joining any strike or combination for the purpose of causing the company to pay him or other miners an advance in wages, was proper, and an answer should have been allowed.

3. PRACTICE—INSTRUCTIONS NOT ALL APPEARING IN THE RECORD.—The objections raised by appellant of the refusal by the court to give instructions asked, cannot prevail, because, although the instruction refused may have substantially embodied the law applicable to the case, yet as the same principles may have been announced in other instructions given by the court, but not incorporated in the bill of exceptions, it is impossible to say that there was error in its refusal.

4. DAMAGES CAUSED BY LEAVING SERVICE—RECOUPMENT.—The refusal of the court to permit testimony as to the damage occasioned to appellant by appellee leaving before the expiration of his time of service, cannot be considered error, for if appellant left in bad faith, he could not, under his contract, recover for any unpaid service, and recoupment would be unnecessary; and if he left in good faith, recoupment could not be allowed, because any injury the company may have sustained after the termination of the contract would not be the subject of recoupment, since it did not grow out of the same transaction.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. SNAPP & SNAPP, MUNN & MUNN, J. W. MERRILL, and GEO. W. HOUSE, for appellant; that the contract for services was entire, and to entitle appellee to recover he must fully perform his part, cited Eldridge v. Rowe, 2 Gilm. 91; Bagley v. Heald, 4 Gilm. 64; McMillan v. Vanderlip, 12 Johns. 166; Cutter v. Powell, 6 Tenn. 320; Barton v. Fitzgerald, 15 East. 258; 2 Parsons on Con. 11; Chitty on Con. 74.

Upon the question of recoupment: Sanger et al. v. Fincher, 27 Ill. 347; Lindley v. Miller, 67 Ill. 244; Streeter v. Streeter, 43 Ill. 155; Stowe v. Yarwood, 14 Ill. 424; 76 Ill. 430; Priestly et al. v. N. Ind. &. C. R. R. Co. 26 Ill. 205; Brigham et al. v. Hawley, 17 Ill. 38; McAper et al. v. Crofford, 13 How. 555.

Appellant should have been permitted to show damages occasioned in consequence of appellee's leaving its service; and the extent of such damages: Cooper v. Randall et al. 59 Ill.

317; Green v. Williams, 45 Ill. 206; Chapman et al. v. Kirby, 49 Ill. 211; Otto et al. v. Jackson, 35 Ill. 349; Mears v. Nichols, 51 Ill. 207; Haven et al. v. Wakefield, 39 Ill. 509; Smith et al. v. Wunderlich et al. 70 Ill. 426.

Messrs. HALEY & O'DONNELL, and Mr. WM. MOONEY, for appellee; that it is presumed appellee acted in good faith until the contrary is shown, and the burden of showing the contrary is upon appellants, cited 1 Greenleaf on Ev. § 802; Best on Ev. § 314; Elkin v. Janson, 13 Mees. & W. 655; Chickering et al. v. Failes, Surv. etc. 26 Ill. 508; Dickinson v. Breedon, 30 Ill. 280; Frontien v. Frost, 3 Bos. & Pul. 302; Hamilton v. Singer Mf'g Co. 54 Ill. 370; Piner v. Cover, 55 Ill. 391.

SIBLEY, P. J.  John Barr, in June, 1876, agreed with appellant to work as a collier under a contract, which, among other provisions, contained the following stipulations:

".This agreement, made this 13th day of June, A. D. 1876, between the Wilmington Coal Mining and Manufacturing Company, of the first part, and John Barr, of the second part, witnesseth:

" That the said party of the second part has agreed, and by these presents does agree, to enter into the employment of the said party of the first part as a miner of coal, to commence on the — day of June, A. D. 1876, and continue therein until the first day of May, A. D. 1877, and to abide by and to adhere to and observe the rules and regulations hereto appended, which are made a part of this contract, and to abide by and observe all other rules and regulations promulgated from time to time by the said Coal Company, for the purpose of regulating mining and other employment in and about the coal mines of the said Coal Company; and not to be absent without leave, except in cases of sickness or other unavoidable contingency, that would prevent him from work; also to keep his roadway properly brushed down, and his room in good working order.

"And the party of the second part further agrees, that he will not stop work, join any strike or combination for the purpose of obtaining or causing the company to pay their miners an

advance of wages, or pay beyond what is specified in this contract; nor will he in any way aid, abet or countenance any such "strike," combination or scheme, for any purpose whatever, during the time specified in the first clause of said contract.

"IV. Any employee may be discharged at any time without previous notice, and any employee wishing in good faith to leave the company's service may do so at any time without giving previous notice, but all arrearages of pay will be due and payable at the next regular pay-day after leaving said employment. Provided, when any employee is discharged by the company, a due-bill maturing on the next pay-day, will be given him for his balance."

The trial in the Circuit Court resulted in a verdict for the plaintiff Barr, and damages assessed at $140.02. A motion was made for a new trial, which the court refused to grant, and an appeal was taken from the judgment there rendered.

On the trial the court permitted the witness Mackey to state what Robert Barr had reported to him respecting the condition of John Barr's room after he had quit work. If it was material to prove under the contract that his room should be kept in good order, Robert Barr was a competent witness for that purpose, and his declarations were mere hearsay, consequently should not have been admitted against the objections of the company.

Most of the questions put by appellant to the witnesses where the answers were disallowed by the court, which are now made the subject of complaint, were founded upon an erroneous construction of the contract, and therefore properly rejected.

Counsel for the company insist that the agreement is an entire one on the part of Barr, to work from the 15th of June, 1876, until the first of May 1877, and he having quit before the expiration of the time, without proof of a sufficient reason for so doing, cannot recover of the company for any services performed.

If the premises are correct, the conclusion is inevitable. But such a construction would violate the plain meaning of ordinary language. Rule 4, made a part of the contract, is explicit, that

"any employee, wishing to leave the company's service, in good faith, may do so at any time without giving previous notice." Could plainer words have been used to express Barr's right to leave the company's service at any time he chose, provided he left in good faith? The words that "he would not stop work," etc., so triumphantly dwelt upon by counsel, to prove that he had absolutely agreed to remain in the company's service until the first of May, have no such meaning.

Taken in connection with what follows, that he would not join in any strike, etc., means simply that while he remained in the employment of the company under the contract, he would continue to work, unless prevented by sickness or other unavoidable contingency. No astuteness is required to determine that to stop work, or quit entirely the service of another, are not convertible terms. Hence each clause in the contract can stand uncontrolled by the meaning of the other.

What is meant by quitting in good faith, is a proposition of easy solution. Good faith is the opposite of bad faith, and here it is proper to remark that good faith is presumed until the contrary is proven. McConnell v. Street, 17 Ill. 253; Morrison v. Kelly, 22 Id. 626.

Bad faith might be inferred if Barr had quit the employment of the company, for the purpose of engaging in a strike or any other combination calculated to injure the interests of his former employers, contrary to the contract. In which case he could not recover for any services rendered, for the reason that he had failed to comply with the terms of the agreement. The inquiry then arises, whether Barr left the employment of the company in bad-faith, and this was the main question to be determined by the jury. For it should be borne in mind, that the contract on his part was an entire one unless he left in good faith. That he quit before the expiration of the time stipulated in the contract there is no dispute. But the motive that induced him to this action was a matter to be fairly submitted to the jury. Therefore, when the witness Phelps was asked whether he knew of Barr's joining any strike or combination for the purpose of causing the company to pay him or other miners an advance in wages, an answer should have been allowed.

The question may have been a little informal, but as no objection was interposed on that account, it was error to exclude the answer.  For if, after leaving the company's service, he joined a strike or combination, for the purpose of forcing it to advance his or the miners' wages above the contract price, this circumstance might have tended to prove that when he quit he had that object in view.  How much weight it would have had with the jury is not a question now to be considered.  The company ought not to have been deprived of the benefit of a full investigation into all the circumstances connected with Barr's intention in quitting the company's employment.

The third and fourth errors assigned by appellant cannot prevail, since the instructions given by the court for either party are not preserved in the record.  The first and second asked by the company do not state the law with any degree of accuracy.  The third, which is this:

3.  "If the jury believe, from the evidence, that the defendant quit working for the company in bad faith, before the 1st day of May, 1877, and joined a strike of the miners of Braidwood, then such conduct of his was a violation of the contract, and the plaintiff cannot recover, and the jury will find for the defendant," although substantially embodying the law applicable to the case, yet as the same principle may have been announced in other instructions given, not incorporated in the bill of exceptions, it is impossible to say that there was error in its refusal.  One of the objections urged against it by appellee has little force.  That there was no testimony upon which to base it.  Besides being an incorrect assumption, still after having induced the court to improperly exclude a portion of what was sought to be proven on that subject, then to insist upon the advantage thus taken, by which proper testimony had been suppressed, is a reason which the doctrine of estoppel alone ought to render unavoidable.

The refusal of the court below to permit the witness to testify as to the amount of damages which the company had sustained in consequence of Barr's having left its employment, is not subject to the objection made.

For if Barr quit in bad faith, he could not, as we have seen,

recover at all, and any recoupment in that case would have been quite unnecessary.

If there was no proof of bad faith at the time of leaving, this recoupment could not be allowed, because any injury the company may have sustained by reason of Barr's conduct after the termination of the contract, would not be the subject of recoupment, since it did not grow out of the same transaction for which the suit was brought.

For the reasons indicated, the judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Judgment reversed.