The Chicago and Western Indiana Railroad Company

*v.*

The Englewood Connecting Railway Company.

*Filed at Ottawa January 25, 1886.*

1. Eminent domain—*one railroad company seeking to cross the tracks of another—elements of damages.* In a proceeding by one railway company seeking to condemn a right of way across the tracks of another company, notwithstanding the petitioner stipulates to put down at its own expense, and keep in good repair, all necessary frogs and crossings for its main tracks across the tracks of the other company, the defendant company, on the assessment of the damages to be paid, has the right to show to the jury that the value of its road, and its capacity to do business, will be impaired by the proposed crossing, and it is error to exclude such evidence.

2. In such case the company seeking to obtain the right of way is liable for all damages directly resulting to the defendant company from the making or using of the crossing, whereby the value of its property is diminished, or its facilities are materially impaired for the transaction of its business. If the inconvenience or hindrance resulting from such crossings or other structures abridges the owner's capacity to transact an equal volume of business, it is an element of damages, even though it does not increase his expenses.

3. The value of railroad property, outside of advantages of location and the amount of business it controls, consists in the strength, permanency and durability of its structures, and its adaptability and capacity of doing railroad business. Whenever, therefore, a proposed condemnation and subsequent user will injuriously affect such a property in either of these respects, the injury thus occasioned will form a proper basis for the assessment of damages in a proceeding to condemn.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

On the 29th of April, 1885, the Englewood Connecting Railway Company filed in the county court of Cook county the following petition :

"Your petitioner, the Englewood Connecting Railway Company, respectfully shows unto your honor that it is a corporation duly organized and existing under and by virtue of the law of the State of Illinois, and as such is authorized to construct and operate a line of railroad from a point on the Chicago, St. Louis and Pittsburgh railroad, in the town of Lake, in the county of Cook and State of Illinois, between Fifty-eighth and Fifty-ninth streets, running thence eastwardly to a point on the Pittsburgh, Fort Wayne and Chicago railroad, in said town, county and State, between said Fifty-eighth and Fifty-ninth streets, with the right to construct all such side-tracks, switches, and lateral and other branches, as the said railway company from time to time, by resolution of its board of directors, determine and elect to build. Your petitioner further shows that its said line of railroad is located in accordance with its charter; that the said line of railroad so located by your petitioner intersects and passes over and across the railroad tracks of the Chicago and Western Indiana Railroad Company laid in Wallace street, in said town of Lake, at a point in front of, and opposite to, lots 11 and 12, in block 4, in Eliza A. Temple's subdivision of the east half of the south-west quarter of the south-west quarter of the north-west quarter of section 16, township 38, north, range 14, east of the third principal meridian, and that your petitioner desires to appropriate and use so much of the track of said Chicago and Western Indiana Railroad Company, in said Wallace street, as may be necessary to make the crossing for two main railroad tracks of your petitioner; that said crossing is necessary for the

purposes of your petitioner's railroad, and to operate the same; that your petitioner is unable to agree with said Chicago and Western Indiana Railroad Company as to the proper or just compensation to be paid to said railroad company for said crossing.   Your petitioner further shows that it is ready and willing, and has offered to said railroad company, and hereby offers, to put down, at your petitioner's cost, all necessary crossing frogs for two main tracks over the said tracks of said Chicago and Western Indiana Railroad Company, in said Wallace street, and to perpetually keep and maintain the said crossing in good and safe repair and condition, at your petitioner's charge and cost; that your petitioner therefore prays that summons may be ordered to issue to said Chicago and Western Indiana Railroad Company, defendant, commanding it to appear before this honorable court on the first day of its next term, and that a jury may be empaneled to ascertain the just compensation to be paid by your petitioner to said defendant for said crossing for said main tracks of your petitioner's railroad.   And your petitioner will ever pray," etc.

The Chicago and Western Indiana Railroad Company filed a cross-petition, charging "that the said property of this cross-petitioner, which it is proposed to take and appropriate to the use of said original petitioner for a crossing, as in said petition is prayed, is part of a continuous line of railroad right of way in constant use, and is owned by this cross-complainant; that said right of way extends continuously from Polk street, in the city of Chicago, on the north, a distance of seventeen miles, to Dalton, a town situated near the State line, between the States of Illinois and Indiana, with a branch leaving the line of road near Eighty-third street, and extending thence east and south a distance of seven miles, to a point on the State line of Indiana and Illinois, near Hammond, in the State of Indiana; that cross-petitioner has a very valuable and extensive passenger depot at Polk street, in the city

of Chicago, and also five freight houses, five freight yards, five engine houses, five switching yards, and a large amount of other property designed for use and being prepared for use as freight and switching yards north of said proposed crossing, and between that and Polk street, in the city of Chicago, a distance of about six miles; that said property was acquired at great expense, and is of great value, and by far the greater part thereof, both in amount and value, is and always, since it was acquired by your petitioner, has been used in connection with its said right of way extending to Dalton and Hammond, as aforesaid, and its chief value is for use in connection with said continuous right of way; that at the point where said crossing is proposed to be constructed, said road is used by agreement with this cross-complainant, and for considerations paid to it by the railroad corporations known as the Wabash, St. Louis and Pacific Railway Company, the Chicago and Eastern Illinois Railroad Company, Chicago and Atlantic Railway Company, Louisville, New Albany and Chicago Railway Company, and Belt Railway Company of Chicago; that more than one hundred trains pass over the same daily, and that said business is constantly increasing; that respondent has now two tracks in use at said point, and also a short track, now used as a side-track, and that said side-track is not on the same level as said main-tracks, and must be raised to such level, if said crossing is allowed, at great expense to cross-complainant; that by the building of the said crossing as proposed, and the use thereof, and the use which can be made of this cross-petitioner's entire property aforesaid, for the said railroad purposes, will be greatly decreased, hindered and prevented, and its value greatly depreciated, and the cross-complainant claims damages therefor."

On the 9th of June, and before the trial of the cause, the petitioner stipulated that it would, at its own expense, put down, and thereafter keep and maintain in good and safe

repair and condition, all necessary frogs and crossings for its two main-tracks across the tracks of respondent, as indicated in its petition, plat and profile, so long as a grade crossing shall be maintained, to be binding on its assigns; also, that it would provide and maintain at its own charge and expense the flagmen or watchmen necessary at said proposed crossing; and further, that it will require for the crossing in question not to exceed thirty feet in width at grade, from the western line to the eastern line of said Wallace street.

There was a trial upon the merits before the court and a jury, resulting in a verdict and judgment in favor of the appellant for $400, to reverse which this appeal is brought.

Mr. CHARLES M. OSBORN, for the appellant:

In the taking of property already, devoted to a public use, the use to which it is to be devoted must be a different and superior one. *Railroad Co.* v. *Railway Co.* 97 Ill. 512.

The necessity for taking it must be absolute, not a merely reasonable one,—that is, the questions of convenience and expense can not be allowed to enter into the determination of the necessity. *St. Louis F. and C. Co.* v. *Trustees of Blind Asylum*, 43 Ill. 303; *Horse Railway Co.* v. *Horse Railway Co.* 81 id. 523; *Hickock* v. *Hine*, 23 Ohio St. 531; *Pugh* v. *Railroad Co.* Law Rep. 12 Ch. Div. 274; *Railroad Co.* v. *Railroad Co.* 97 Ill. 506.

The next error insisted upon is, that the court improperly excluded all evidence of the injury done to the value of the property of the Chicago and Western Indiana Railroad Company, considered as a whole, and refused to give proper instructions concerning such damages, in effect ruling that only structural damages could be recovered. *Railroad Co.* v. *Railroad Co.* 100 Ill. 21; *Railroad Co.* v. *Railroad Co.* 67 id. 147; *Railroad Co.* v. *Railroad Co.* 35 Mich. 365; *Railway Co.* v. *Railway Co.* 105 Ill. 110; *Railroad Co.* v. *Railway Co.* 105 id. 388.

Mr. R. BIDDLE ROBERTS, and Mr. FRANK J. LOESCH, for the appellee:

In view of the stipulations made by appellee in open court, and filed by it, we claim that the court below was clearly right upon its ruling on the question of damages. *Railway Co.* v. *Railway Co.* 105 Ill. 110; id. 388.

In view of the stipulation made by appellee to provide and maintain at its own charge and expense the flagmen or switchmen necessary at said crossing, it would have been manifestly improper to have allowed evidence of the cost of extra watchmen and flagmen by appellant.

The stipulation and ruling were in accordance with law, as laid down in *Railroad Co.* v. *Railway Co.* 105 Ill. 388.

Messrs. WILLARD & DRIGGS, also for the appellee.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

A reversal of the judgment in this case is urged on several grounds, but as one of them is deemed sufficient it will not be necessary to consider the others.

Appellee having stipulated to "put down at its own expense, and thereafter keep and maintain in good repair and condition, all necessary frogs and crossings for its two main tracks across the tracks of appellant," the court, on the trial, excluded all evidence from the jury tending to show that either the value of respondent's road, or its capacity to do the business of the company, would be impaired by the proposed crossing,—in short, the court ruled, in effect, that the respondent was only entitled to nominal damages. The ruling of the court in this respect, when formulated into a distinct proposition, seems to be this: A railway company may locate its tracks across the road of another company at any point it pleases, and without regard to the effect it will have on the value of the road to be crossed, or its capacity

to do the necessary and legitimate business of the company to which it belongs, and however serious the injury will be in these respects to the company whose road is thus crossed, it will be entitled to nominal damages only, provided the company proposing to do the injury will stipulate that it will make and maintain the crossing at its own expense. A law leading to such results can hardly be distinguished, on principle, from one which would permit a railway company to locate its depot grounds in the center of another's farm upon the payment of a copper, or other nominal sum, *provided* the company would stipulate to relieve the owner of the farm of the burden of erecting and maintaining the depot buildings. That the enforcement of such a provision in the name of law would be simple confiscation but poorly disguised, is manifest. That no government in which the distinction between *meum* and *tuum* is recognized would sanction or enforce a rule of that kind, may well be assumed.

It is claimed the ruling of the court below in the respects stated is sustained by *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Ry. Co.* 105 Ill. 110, and *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Ry. Co.* id. 388. Before remarking upon these cases it is proper to call attention to the case of *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana Railroad Co.* 97 Ill. 506. A bill was filed by the appellant in that case to enjoin the present appellant from prosecuting a condemnation suit commenced by it in the county court of Cook county, to obtain the right of way across certain grounds and tracks of the complainant in the city of Chicago. The chief grounds relied upon for a perpetual injunction in that case were, that the crossing of the complainant's tracks by the defendant's trains would so interfere with the running of complainant's trains as to greatly embarrass its business, and subject it to immense losses, that could not be accurately determined or compensated for in an action at law. It was

further urged upon the argument, that inasmuch as the Eminent Domain act did not make any provision as to the manner or place of crossing other roads, it was inoperative and void; that the legislature could not have intended to put it in the power of a company seeking a crossing over another's tracks, to practically ruin the business of the latter, and consequently the value of its road as a property; that such a power would be dangerous to the rights of other corporations and the interests of the public. This court, in the opinion filed in the case, conceded that a railway company seeking to cross the road of another company, has, under our statute, the right to determine both the place and manner of crossing, and in answer to the argument that such a power might be arbitrarily and wantonly exercised, said: "The security against a wanton and arbitrary exercise of this power upon mere whim or caprice, and that in all cases the point and manner of taking selected will be that least injurious to the owner and yet suited to the public necessity, is found in the fact that such corporations will be induced by considerations of their own best interests, to select, in making such crossings, that practical place and that practical mode which will be the least detrimental to the owner, because the corporation so selecting is required by law to make to the owner full compensation, and the more injurious to the owner the place selected and the mode chosen, the greater will be the amount of necessary compensation to be paid." This language, when considered in the light of the facts in that case, and the argument that was then pressed upon the court, leaves no doubt as to what was meant. The obvious and palpable meaning of it is, that the appellee in that case would be liable to the appellant in the condemnation proceedings sought to be enjoined, for all damages directly resulting to it from the making or using of the crossing in question, whereby the value of its property was diminished or its facilities materially impaired for the transaction of its own business. To put any

other construction upon what was said would be doing violence to the language then used.

We will recur now to the two cases above mentioned, and cited by appellee's counsel as sustaining the view taken by the trial court. So far as the case of *The Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Ry. Co.* is concerned, that simply holds that damages which result from the stopping of trains before making a railroad crossing, in conformity with the requirements of the statute, can not be treated as an element of damages in a condemnation proceeding, on the ground that the statute is a mere police regulation, liable to be repealed at any term. We certainly see nothing in this that sustains appellee's position. *Peoria and Pekin Union Ry. Co.* v. *Peoria and Farmington Ry. Co. supra*, follows the other case in the respect we have stated. But it does something more. It expressly holds that in cases of this kind damages are recoverable for such injuries "as depreciate the value of the property, whether by taking a portion of it, or rendering the portion left less useful, or, in case of a railroad company or other corporate body, less capable of transacting its business,—such a hindrance and inconvenience as occasion loss, or diminish and limit its capacity to transact its business, by decreasing the power to transact as much, or by necessarily increasing the expense of what may be done, although not diminished." The test given in this case as to whether a particular inconvenience or hindrance, resulting from a crossing or other structure, should be treated as an element in the assessment of damages, is, does the inconvenience or hindrance in question necessarily abridge the owner's capacity without increasing his expenses to transact an equal volume of business? If it does, it constitutes an element of damages, otherwise it does not, unless the value of the property itself is thereby depreciated, in which case that is always to be taken into the account in the assessment of damages.

The rule here given is sufficiently accurate for general pur-
poses, and is but a repetition of what was said, in effect, in
*Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and
Western Indiana Railroad Co.* 100 Ill. 21.    The opinion in
that case contains an elaborate review of the authorities on
the very question now under consideration, and after a most
thorough examination, aided by the arguments of some of the
most eminent counsel in the State, a conclusion was reached,
which was then, and is now, believed to be in consonance
with simple justice, and in conformity with the constitution
of the State, and an unbroken line of decisions of this court.
The case was afterwards most carefully reconsidered, on a
petition for rehearing, and the conclusion theretofore reached
was adhered to.    That case distinctly holds, that where it is
sought to take the property of a corporation in a proceeding
of this kind, the same rule is to be applied in the assessment
of damages as is applied to an individual under like circum-
stances, and the principles to govern the assessment in such
a case are laid down in clear, unequivocal terms.    In that
as in this case, it was sought to limit the damages to the
local direct physical injury to the company's property, but
the attempt was not successful.    Upon this question it was
then said:    "The right of way is a right of user extending
the whole length of the railroad, and any interference with it
at any point, we think, may be considered in connection with
and as affecting it as an entirety.    We think it was compe-
tent to show as attempted, and to recover for damages to
which the companies would be subjected by placing obstruc-
tions upon the right of way, whereby access to different parts
of their lines would be interfered with, and their capacity for
the transaction of business impaired or destroyed.    *   *   *
The limitation of the recovery of damages to those for the
direct physical injury to the land was too restricted under
the above cited decisions of this court, which are to the effect
that there should be compensation for all such incidental

loss, inconvenience and damage which may reasonably be expected to result from the construction and use of the crossing."

The authority of this case has never been questioned, so far as we are advised, and the reasoning of the opinion is believed to be sound and unanswerable, outside of the fact that it is supported by the repeated decisions of this court. To say that the use of the subject of property may be limited or partially destroyed in the manner proposed, without affecting the right of property itself, is in plain terms a legal absurdity, for property itself, in a legal sense, is nothing more than the exclusive right "of possessing, enjoying and disposing of a thing," which, of course, includes the use of a thing. Suppose the business of a railway company requires it to use a particular part of its road all the time, so that it could not stop without greatly deranging its business and subjecting it to serious pecuniary losses. Now if, under these circumstances, a new company should be organized, and propose to run a number of tracks across that part of the old company's line in constant use, and to conduct such a business on the new road as would occupy the crossing half the time, and consequently reduce the capacity of that part of the old company's road just one-half, can it be doubted this would be an invasion of the right of property for which, under the constitution of the State, compensation would have to be made? It is manifest that the value of a railroad property, outside of advantages of location and amount of business it controls, consists in the strength, permanency and durability of its structures, and its adaptability to, and capacity for doing railroad business. The conclusion would therefore seem irresistible, that whenever the proposed condemnation and subsequent user will injuriously affect such a property in either of these respects, the injury thus occasioned will form a proper basis for the assessment of damages in a proceeding of this kind.

It follows from what we have said, that the trial court erred in its rulings upon the admission of testimony touching the question of damages, and for this error the judgment is reversed and cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*