## SAMUEL McCARTY

### v.

### THE CHICAGO, BURLINGTON & QUINCY RAILROAD CO.

34   273
95   1   77

*Railroads—Action against for Injury to Realty—Additional Track—Instructions—Evidence—Admission of—Verdict not Contrary to.*

1. In an action against a railroad company by the proprietor of a hotel property, for injury alleged to have been done to same, by defendant doubling its track, erecting a signal station, etc., adjacent to the same, this court holds that a verdict for one cent as damages was sustained by the evidence, and that there were no material errors in the instructions or in the admission of evidence.

2. Where the record does not contain all the instructions that were given, it will be presumed that the omitted instructions cured any inaccuracies that may be complained of.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

This was an action on the case commenced by appellant in the City Court of Aurora, and venue changed to the Circuit Court to recover for alleged damages resulting to appellant, for putting in additional railroad track and switches in front of his hotel, along La Salle street, between York street on the north and Main street on the south, which track ran beyond and across Fox river.

The declaration in the several counts charges the following causes for damages: That defendant took a strip of land off appellant's property and damaged him thereby; that appellee raised the grade of its track on La Salle street, thereby damaging the entrance to the hotel, and the rental and market value of the same; that a number of switches had been erected within a· few feet of the western entrance of the hotel, and within a few feet of the west line of his land, and that many engines and cars were switching by said place, and that smoke, cinders and ashes dropped upon and blew into his hotel, and that bells rung and whistles blew, damaging appellant. That appellee moved one of its tracks within a few feet of the west line of his land, thereby destroying the driveway, and that it put additional tracks in, damaging appellant; that appellee erected a flag station within a few feet of his hotel, unsightly in appearance, and that smoke and cinders blew into the hotel therefrom, damaging him. That the rain from La Salle street filled the gutters with surface water, damaging him; that appellee erected gates at the intersection of Main and La Salle street, causing him damage; that La Salle street had been substantially appropriated, damaging him. The `general issue was pleaded, with the stipulation that all lawful defenses be made the same as if pleaded. The cause was tried by a jury, resulting in a verdict finding the appellee guilty, assessing the damages of the plaintiff at one cent; motion by appellant for a new trial being overruled by the court, and judgment rendered, the cause is brought here by appeal.

The facts in the case, as related by appellant himself, are about as follows: The hotel of the appellant, called the Tremont House, is located on the northeast corner of La Salle and Main streets in Aurora. In 1852 or 1853, probably in the fall of 1852, or in January, 1853, appellant purchased the lot on which the hotel building stood, and got a deed about the 11th of April, 1853. At that time there was no railroad track running along La Salle street past the property. About in November, 1853, the appellee extended its railroad past appellant's house a short time before he furnished it. The property had been used for a hotel before he purchased it,

and has been used for the same purpose ever since. The hotel had been enlarged and improved until 1856, since which time it has remained about the same, except an addition on the back side. It is sixty feet on La Salle street, seventy-four on Main street, and in the back there is a kitchen and laundry. The building is three stories above the basement, three entrances on La Salle street, and one on Main street. When the railroad track was first extended by appellant's property along La Salle street, where it intersects Main street, it was within a foot or so of the center of the street. La Salle street was sixty-six feet wide. When the track was originally laid it left a space of about twenty-four feet between the track and his property. On Main street the space left was not as much as that. As the track ran north it curved. On the north line of appellant's property the track was fourteen feet from the line of his property.

On the west line of the railroad bed there was a pretty good wide street, about thirty feet. The railroad put in a switch north of appellant's property, a high one, that stood out from the track, and at the same time it extended the road down twelve or fifteen feet north of the building—it might have been further.

Appellant had to move his gate to get into his back yard. The track switched east to connect with the original track. About eight or ten years before appellee put in the double track complained of, a track called the Batavia track was put in on the west side of the depot. The switch connecting with that track went up north on the west side of the depot (which is about four hundred feet north of appellant's premises), and it came down to appellant's north line. Prior to putting down the second track, the switch spoken of north of appellant's building had been in a good many years; there was one also put in for the Batavia track, not a great way apart. The Batavia switch near his building was on the west side of the track; appellant thinks it was put in in 1878 or 1879; in fact, it was in 1873. What was called the second track was put in in the middle of the summer of 1883. It was some thirteen feet and eight inches east from the east

rail, and it extended up La Salle street to the east side of the
depot. The appellee moved the original track a little south-
west, and put in a switch a little north of the line of Main
street, about six feet from the north line and twenty feet west
from appellant's building, in the center between the two
tracks, six feet north of the south line of appellant's build-
ing, which is on a line with Main street.

The east rail of the track is within nineteen feet and eight
inches of appellant's building, at the southwest corner.

As the track goes north it bends toward the east, curving
east at the north end of the building. It is twelve feet and
two inches at the north end. The flag station is erected for
the benefit of the company, in the street, diagonally from the
southwest corner of the hotel, in Main street, about twelve
feet from the corner of the building, being seven or eight
feet in diameter. It has been standing there about three
years. It was made to shelter the flagman from the inclem-
ency of the weather. It stands about five feet east of the
railroad; the whole street in front of the appellant's house is
planked over. There is no roadway possible running to the
north line of his premises. It is planked there as a sidewalk.
When a passenger coach stands there at the north end of the
vacant lot, there is about one foot space, or a little more, from
the side of the car to appellant's line.

The walk is very wide and somewhere between four and
five feet on appellant's land. The appellant's vacant lot is
sixty feet fronting on La Salle street, and they commenced
cutting off from appellant's land, at the north end of his
building, to make room for the sidewalk, so that the sidewalk
is crowded on his lot to that extent. The lot is 100 feet
deep. Before the double track was put in there was a road-
way of eight feet or more, east of the track opposite appellant's
lots on La Salle street, where people occasionally went in.
There was room enough so that it could have been used as a
driveway; as a matter of fact it was not so used. When the
double track was put down and the street planked it was in
as good condition for passengers as when only one track was
there.

The second switch is ninety feet north of the one on Main street, and is high, but not as high as the old one. The one on Main street is a low switch. Fox street is the next street north of Main. Main street is eighty feet wide. The vacant lot of appellant is sixty feet fronting on La Salle street, and joins appellant's hotel lot on the north, and was purchased by him in the year 1865. Before the double track was put in, there was about eight feet more between the piazza on the west side of the hotel and the original track. The piazza is in the street and is about seven feet wide. At the northwest corner of appellant's lot, where the original switch was, the people drove through occasionally. There was an eight-foot side-walk there and they could not drive through without driving on the sidewalk. It is in the neighborhood of twenty-five years since people have driven through there.

After the double track was put in they put down a sidewalk, at that point, seven or eight feet wide. It was wider at the other end.

The sidewalk on the north line is on appellant's land. Fox river is west of La Salle street. After the high switch was put in, over twenty years before the double track, the appellant had no entrance to his vacant lot from La Salle street. He took away the gate and entered from Main street.

Messrs. A. C. LITTLE and CHARLES WHEATON, for appellant.

Messrs. HOPKINS, ALDRICH & THATCHER, for appellee.

LACEY, J. The causes assigned for reversal of the judgment of the court below are as follows: First. The court erred in its rulings on the admission of evidence at the trial. Second. In giving instructions to the jury on its own motion and on motion of appellee. Third. The verdict was contrary to the weight of the evidence.

The main if not the only damages claimed to have resulted to appellant arose from the putting in the double track in 1883, as described by appellant, and operating the same.

There was a large number of witnesses examined in the

case on both sides as to the various facts, and especially as to the question of how much appellant was damaged by reason of putting in the double track.

The number who swore that appellant was damaged were about fifteen or sixteen, putting his damages all the way from no particular amount stated, to $10,000, ranging along from three, five, six, eight and ten thousand. The number who testified on the part of appellee was some fourteen, and they were as positive that there were no damages as the appellant's witnesses were that there were, and a number of the witnesses for appellee even claimed that the change was a great benefit to appellant.

It appeared from the examination of appellant himself, as a witness in his own behalf, that the rental value of his hotel has increased from the time of the putting in of the double track complained of, from nine to twelve hundred dollars per annum, and that the latter rental had so continued from that time until the commencement of the suit. It also appeared that appellant regarded the increased value of his property, shortly after the improvements, to be at least $2,000.

Appellant was the first witness, and under this state of the evidence it was impossible for appellant to secure a rightful recovery, unless it could be made to appear that there was a general increase in the value of property similarly situated to his own, and that his property, in common with the general increase, had advanced to the amount of the actual increase, and also would have advanced in value a large sum besides, equal to the damages claimed, save for the putting in the double track and making the other changes by appellee complained of here.

Or he must show that this increase was attributable to a cause or causes other than the benefits which possibly might specially accrue to appellant's hotel from making the improvements. *Prima facie* the evidence showed it was not damaged. If he failed to make such a showing the appellant's own evidence clearly showed that his property had not been injured by the changes in the railroad track, in the street and the other causes of which he complained.

The appellant's counsel then asked of the appellant himself and Thorworth, Jameson and Hannall, whether there had not been a large general increase of values in property similarly situated to that of appellant's hotel, and they all answered that there had been.   Then on cross-examination the counsel for appellee asked the same witnesses questions, whether or not in the opinion of the witnesses the location of appellee's shops in Aurora and the passenger depot near the hotel and the employing a great number of hands in the city had benefited the hotel, and whether appellant derived any special benefit from the railroad company.   It is objected that the questions and answers were improper, as appellant fears that the jury was misled by them to believe that this class of benefits were a legal offset against the damages sued for, the witnesses all answering these questions in the affirmative.   Counsel for appellee insists that such questions were proper on cross-examination to test the knowledge and intelligence of the witnesses on the subject on which they had been examined in chief, and disclaims any intention of making any improper use of such testimony; also that he offered no such evidence on appellee's part in chief.

According to our practice, trial courts have a large discretion in allowing questions apparently irrelevant on cross-examination and in allowing a wide range, and such discretion will rarely ever be interfered with by an Appellate Court unless it clearly appears that the discretion has been abused.   It would appear to us that it would have been entirely proper to allow the witness, under the circumstance, to be interrogated on cross-examination as to how the witnesses formed their conclusion as to what caused the rise in the value of property, and what, in their judgment, were the causes, and if it had come out incidentally, that it was attributable to the facts above interrogated about it, would not appear to be at all out of the regular course, but it would be the duty of the court, especially if requested by appellant, to instruct the jury not to make an improper use of such evidence and to give the proper rule for allowing the defendant's benefits.

It would no doubt have been better if the court below had

refused to allow the identical questions to be put to the witnesses in that manner, as undue emphasis appeared to be placed on those particular facts. But it appears that several of the questions were not objected to at the time and also similar questions and answers went before the jury without objection. Also various causes were shown operating after the alleged injury, explaining why property had increased in value in parts of the city, such as building the bridge across the Fox river, the coming in of the North-Western railroad and the industries that came in about that time, and among them the increase of the business and improvements of the appellee.

We are also informed by an examination of the record that the bill of exceptions does not purport to contain all of the instructions, but it contains a statement that instructions were given for appellant, though none are copied as being a part of them. Under these circumstances this court will presume that the jury was fully instructed on the question of allowing proper benefits to appellee, and what not to allow. And if such instructions were not asked, it was the fault of appellant. The instruction given by the court also, in its scope, appears perfectly clear as to the proper measure of damages on this subject. We are satisfied that the appellant was not harmed by the allowance of the questions and answers.

We are also of the opinion that the questions asked of the railroad officials and allowed to be answered were proper.

The objection is that they were allowed to give an opinion, whereas they should have been confined to facts; that the subject was not one for expert testimony. It appears to us that these witnesses were skilled in the science of operating railroads, and by such skill would have a peculiar knowledge of the effect the putting in of this additional track and switches would have on the amount of switching as compared with the old arrangement and also as to the stopping of stock trains in front of appellant's house.

The witnesses were not really asked for an opinion, but they gave it, and stated in full their reasons, which all went before the jury, and we can see no valid objection to it.

The objection to Mulvey's testimony as to the condition of the sidewalk on La Salle street as compared with the old, and the cross-examination of appellant as to whether his house was in the street sixteen inches, are not well taken, and it was proper enough, as one of the surrounding facts, to show that appellant's porch was out in the street. However, appellant appeared to fail to show it.

The great and important error, as appellant's counsel claims, is that the court gave improper instructions; and first, it is claimed that the court gave instructions to the jury on his own motion, that the appellant could recover for physical damages only. This portion of the instruction given by the court to the jury is complained of as violating the proper rule of damages.

The portion of appellee's instruction complained of is as follows: "He (the plaintiff) is not entitled to recover all the damages caused to his premises by reason of the existence and operation of defendant road near his premises, but may recover for such damages only as are denominated by the Supreme Court physical damages to his property caused by the making of the changes complained of, such as jarring of the ground, the casting of smoke, ashes, sparks and cinders upon his premises, cutting off and rendering more difficult access to his property, if these are shown by the evidence."

In view of what was sought to be recovered in this case, i. e., the depreciation in the market value of appellant's hotel, we think the particular part of the instruction alluded to could not have the effect to mislead the jury, although the expression, "physical damages," may not be, in the connection used, a strictly accurate one.

But the samples given of what is meant gives the jury full liberty to give appellant all the damages claimed. Then the instruction, after telling the jury not to give speculative or fanciful damages, but real damages, such as affect the market value of appellant's property, closes with telling them the recovery should be the amount of the market value that appellant's property has been lessened by the changes complained of. This is all that is claimed. There was no fran-

chise in question, and probable loss of property by interruption in business, as there was in the case reported in C. & W. I. R. R. Co. v. E. C. R. R. Co., 115 Ill. 375, and cases there cited. One of the samples shows that it was not meant by "physical injuries" such only as touched the lot itself, but being cut off from access to his property was given as an example.

The word "physical" has a number of meanings, and unless carefully used with proper explanations, is liable to mislead.

In The City of Chicago v. N. B. Ass'n, 102 Ill. on page 194 of the opinion, speaking of what would entitle a party to recover in case of an obstruction in a public street as is, in part, at least, the case here, the court says: "If it does not practically affect the use or enjoyment of neighboring property and thereby impair its usefulness, no action will lie. In all cases, to warrant a recovery, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value; and that by reason of such disturbances he has sustained a damage with respect to his property, in excess of that sustained by the public generally." It is evident that a physical disturbance of a right can not be quite the same as a physical injury to a person or a corporal body. In the former case it is used in an allegorical sense, in the latter more in the primary meaning.

The instruction complained of is so plain if applied to the facts in the case, we can see but little chance of the jury being misled. It appears that this was a charge given by the judge, covering extensive ground, and the particular portion sought to be objected to should have been especially excepted to at the time, and not the entire charge, as here. What is said here will apply to the appellant's objection to the appellee's 3d, 8th and 10th instructions. In addition the 8th instruction appears to be a little ambiguous in appearing to lay out of view the right the appellant had to the natural appreciation in the value of the hotel, but the latter part of it seems to instruct that the increase and decrease in the market value of the property was to be considered with reference alone to the changes of defendant's railroad which were complained of·

But when this instruction is read in connection with the one given by the court we are satisfied it is not fatally erroneous.

The 6th instruction, we think, under the rule laid down in City of Chicago v. N. B. Ass'n, *supra*, was substantially correct.

The same may be said as to the watch-house. These gates and the watch-house were very insignificant in the mind of all the witnesses, including appellant, in their estimate of damages.

The structures might have been as readily required without as with the double track, having been put in by reason of the growth of the city. They were put in for the public safety and not for the benefit of the road entirely, although the road, indirectly, might have been the cause of their being put in. The road, as against appellant, had a vested right to have the original track in the street, and if that caused the gate and watch-tower to be put in the street there would be no possible right to recover. The appellant made no proof but that this was the case.

The 12th instruction is not subject to the criticism made, that it is liable to lead the jury to understand that appellant could not recover damages to those lots because they were purchased by appellant after appellee's road was laid in front of this property.

But there is another reason why this judgment can not be reversed for reason of any error in appellee's instruction. That is, the record does not purport to contain all the instructions, and all of appellant's given instructions are wanting, although the bill of exceptions shows some were given. In their absence this court will presume all insufficiencies and inaccuracies were cured by those given for appellant. Wilmington Coal Mining Co. v. Barr, 2 Ill. App. 84; Truesdale v. Ford, 37 Ill. 210; Weyhrich v. Foster, 48 Ill. 115; Ives v. Vanscoyoc, 81 Ill. 120; Drew v. Beall, 62 Ill. 164. Meyer v. Temme, 72 Ill. 574, though made an exception, announces the general rule. Weyhrich v. Foster, 48 Ill. 115.

There remains now only the question to consider whether

the verdict was against the weight of the evidence. It is strenuously insisted by appellant's counsel that it is. But we are satisfied that this court would not be warranted in setting it aside for such reason. The opinion of the witnesses as to whether there were any damages vary widely, some placing the damages very high, others at nothing, and others think that the property was benefited.

The witnesses, so far as we can judge, seem to be intelligent on either side, and we are unable to say that the witnesses for appellant are more so, or their evidence more worthy of belief than those on the side of the appellee. There was one fact, however, that stands out prominently, and that is, that the hotel in question rented for one-third more after the double track was put in than before, indicating that the property had increased in value thirty-three and one-third per cent. The property was estimated by the appellant himself to have increased in value $2,000. No one, as we find from the evidence, swears that it has decreased. This fact is attempted to be accounted for by appellant by proving that property in general in that locality had largely increased in value, varying from ten to one hundred per cent.

Some favored localities were supposed to have increased one hundred per cent. But the average would probably not exceed twenty-five or thirty per cent. It could not, we think, fairly be claimed that property abutting on a street already having a railroad on it would be increased more than this apparently has. A point is raised that at least the vacant lot has decreased in value, because some of appellant's witnesses have so testified. The plaintiff, however, did not seem in his testimony to put a special stress on the fact as claimed, that the vacant lot had suffered more than the other. The evidence failed to show that the vacant lot was deprived of an entrance with vehicles from La Salle street by the putting in of the double track. That had been substantially closed for nearly twenty-five years. For nearly that length of time appellant's access to this vacant lot had been from Main street. The property was estimated by most of the witnesses in gross. The jury failed to give credit to those witnesses who swore to

the high rate of damages on the vacant lot.   It failed to honor their judgment and saw proper to give credit to appellee's witnesses.   The jury having been favored by the presence of all the witnesses before them and with hearing them testify, were better able to judge of the proper weight to be given to their evidence than we are.   We can not say it decided incorrectly· The point is made that there was no evidence on which to base a verdict of one cent damages; that if the jury found the appellee guilty the damages should have been higher.   We think there was plenty of evidence on which to base such a verdict.   Where the evidence varies so widely as it did here, and so radically, the jury would be justified in accepting a mean between the extremes and in finding a nominal sum or in finding even for the defendant.   We find no substantial error in the record and affirm the judgment.

*Judgment affirmed.*