## WILLIAM E. GILLETTE*

### *v.*

## THE AURORA RAILWAYS COMPANY.

*Opinion filed June 19, 1907—Rehearing denied October 8, 1907.*

1. CHANGE OF VENUE—*all defendants in condemnation need not join in petition for change.* In a condemnation proceeding where several of the defendants, after proper notice, present petitions for a change of venue, in proper form and duly verified, alleging prejudice of the judge and averring that the change will not be prejudicial to the petitioner or any of the other defendants, it is the duty of the judge to grant the petitions without first directing separate trials, since the change of venue operates as a severance. (*Eddleman* v. *Union County Traction Co.* 217 Ill. 409, explained.)

2. SAME—*what is not a waiver of error in denying a change of venue.* Proceeding at once to the trial of a condemnation case after taking exception to the action of the trial court in overruling the petitions of several of the defendants for a change of venue upon the ground of prejudice of the trial judge is not a waiver by defendants of the alleged error in overruling the petitions. (*DuQuoin Water-Works Co.* v. *Parks,* 207 Ill. 46, distinguished.)

3. RAILROADS—*commercial railroad may construct its line in a public street.* Paragraph 5 of section 19 of the general Railroad act gives to corporations organized thereunder the power, with the consent of a city, to construct its railroad upon and along any public street of the city, and paragraph 90 of section 1 of article 5 of the City and Village act imposes the conditions upon which a city may grant such a privilege to a railroad.

4. SAME—*right of commercial railroad to condemn fee in street.* Where a city has granted to a corporation organized under the general Railroad act the right to construct its railroad upon and along a public street of the city, the power of the corporation to condemn the interests of abutting property owners who own the fee in the street cannot be denied upon the ground that the property is already devoted to public use as a street.

5. SAME—*fact that city prohibits railroad from hauling freight does not change its character.* A corporation cannot be organized

---

*With this case are decided the following consolidated cases: 5352, *Greene* v. *Aurora Railways Co.;* 5359 *Russell* v. *Same;* 5360, *Bennett* v. *Same;* 5362, *Elder* v. *Same;* 5363, *Dunning* v. *Same;* 5364, *Bell* v. *Same;* 5365, *Evans* v. *Same;* 5366, *Safford* v. *Same.*

under the general Railroad act for the sole purpose of operating a line of street railway in a city, but the fact that the city, in granting to a commercial railroad the right to construct its railroad along a certain street, restricts the use to passengers, baggage and express, does not deprive the corporation of its power to condemn the fee in the street, if it is otherwise authorized to exercise such power.

6. SAME—*any corporation having power to construct a railroad has power to condemn.* Under the Eminent Domain act any corporation which has the right to construct or maintain any railroad has power to take property for the use of its road without the owner's consent and to take the proceedings for that purpose specified in the act.

7. SAME—*right to construct railroad is a condition precedent to power to condemn.* Whether there has been any irregularity in the organization of a railroad corporation such as precludes it from being a corporation *de jure* is a question which cannot be inquired into in a proceeding by it to condemn land, but the question whether there is any law which authorizes a corporation to exercise the powers which are assumed by it may be determined in such a proceeding, since the right to condemn is made, by statute, to depend upon the right to construct the railroad.

8. SAME—*court may determine whether uses fall within terms of grant.* The question under what conditions the power of eminent domain may be exercised is purely legislative, but it is for the courts to determine whether the statutory conditions authorizing the exercise of the power exist in the particular case, and whether the uses and purposes for which the property is sought fall within the legislative grant.

9. SAME—*whether articles of incorporation authorize condemnation proceeding is open to investigation.* In a proceeding by a corporation to condemn land, the question whether the articles of incorporation authorize the proceeding is open to investigation by the court.

10. SAME—*general Railroad act requires fixed termini between places named.* The general act for the incorporation of railroad companies authorizes the organization of such corporations for the purpose of building a railroad, with fixed termini, between places named in the articles of incorporation, and is not designed for nor adapted to the construction and operation of a system of street railways in a city.

11. SAME—*general Railroad act does not authorize construction of street railway system.* The general Railroad act does not authorize the organization of a company to construct and operate a railroad "from and between points in the city of Aurora, Kane county, Illinois, to points outside of said city and adjacent thereto,

connecting with lines of its railroad running around said city," since such description authorizes the construction of a whole system of street railways in the city named, and being without power to construct the railroad the company is without power to condemn.

APPEAL from the City Court of Aurora; the Hon. JOHN L. HEALY, Judge, presiding.

HOPKINS, PEFFERS & HOPKINS, and CARNES, FAISSLER & COCHRAN, for appellant Gillette:

When a petition for a change of venue is offered in proper form, the court has no discretion and should grant the change. *Woodhull* v. *Kelly,* 10 Ill. App. 445; *McGoon* v. *Little,* 2 Gilm. 42.

Appellee's charter did not comply with the conditions precedent of the statute in setting out the termini of the road. The statute (chap. 114, sec. 3, clause 2,) requires that the articles shall state the places from and to which it is intended to construct the proposed railway. Appellee having failed to comply with this condition precedent of the statute, it could not condemn appellant's property in Galena street or construct any railway in Galena street. *Gillinwater* v. *Railroad Co.* 13 Ill. 1; *Mitchell* v. *Railroad Co.* 68 id. 286; *Railroad Co.* v. *Smith,* 78 id. 96.

Appellee is a corporation organized under the general Railroad act, and cannot, under its charter, condemn property for the use of and operate a street railway. *Wiggins Ferry Co.* v. *Railway Co.* 107 Ill. 407; *Harvey* v. *Railway Co.* 174 id. 295; *Dewey* v. *Railway Co.* 184 id. 426; *Goddard* v. *Railway Co.* 202 id. 362; *Knopf* v. *Railroad Co.* 197 id. 212.

Appellee is a railroad organized and existing under the general Railroad act, and it could not bind itself, by stipulation or ordinance, not to carry freight upon its lines of railway. It cannot change itself from a commercial railroad into a street railroad by contract with the city.

Appellee has no right, power or authority to condemn Galena street from May to River street, and to construct its railroad longitudinally in that street. *Railroad Co.* v. *Sanitary District,* 218 Ill. 286.

Where land is devoted to a public use it cannot be taken by condemnation for another public use, unless the legislature, in express terms or by necessary implication, has authorized it to be taken. 10 Am. & Eng. Ency. of Law, 1095, 1096; *Inhabitants* v. *Railroad Co.* 58 Mass. 63; *Pennsylvania Railroad Co.'s Appeal,* 115 Pa. St. 514; *Goddard* v. *Railway Co.* 202 Ill. 362; Rev. Stat. chap. 114, sec. 3, and pars. 5, 6, of sec. 19; *Gillinwater* v. *Railroad Co.* 13 Ill. 1; Const. art. 11, sec. 12; *Railroad Co.* v. *Railroad Co.* 122 Ill. 473; *Harvey* v. *Railway Co.* 174 id. 295.

Appellant had the right to deny appellee's power to condemn, and this denial of its power was no collateral attack upon its existence as a corporation. *Harvey* v. *Railway Co.* 174 Ill. 295; *Trust Co.* v. *Railroad Co.* 208 id. 419; *Dewey* v. *Railroad Co.* 202 id. 362; *Tudor* v. *Railroad Co.* 154 id. 129; *Goddard* v. *Railway Co.* 202 id. 362.

NEWMAN, NORTHRUP, LEVINSON & BECKER, CHESTER E. CLEVELAND, and REID & QUACKENBUSH, (SEARS & SMITH, of counsel,) for other appellants.

FRED A. DOLPH, CHARLES C. BUELL, CHARLES P. ABBEY, JOHN M. RAYMOND, JOHN K. NEWHALL, and THEODORE WORCESTER, for appellee:

The application for a change of venue was properly refused because all of the defendants below did not join, as required by statute. *Eddleman* v. *Traction Co.* 217 Ill. 409.

Appellants asked for no severance but insisted the case should be tried as one case. Some of the appellants in this court did not join in the application for a change of venue, and none of the respondents who have not appealed filed motion for a change. If joinder was unnecessary, the par-

ties now raising the question are estopped because they waived the error by afterwards going to trial before the same judge without insisting upon his disqualification. *Water-Works Co.* v. *Parks,* 207 Ill. 49; *Johnson* v. *Von-Kettler,* 66 id. 63; *Flagg* v. *Roberts,* 67 id. 485; *Noyes* v. *Kern,* 94 id. 521; *Sampson* v. *People,* 188 id. 592; 11 Ency. of Pl. & Pr. 782.

All preliminary questions of power and jurisdiction must be raised by motions to dismiss, and without such motions will be deemed waived. *Cella* v. *Railroad Co.* 217 Ill. 326; *Guyer* v. *Railway Co.* 196 id. 370; *Lieberman* v. *Railroad Co.* 141 id. 140; *Sexton* v. *Stock Yards Co.* 200 id. 244.

The Aurora Railways Company was organized under the general Railroad act of Illinois. It has received its charter from the State. It is therefore not merely a *de facto* corporation, but is a corporation *de jure.* The questions whether it is lawfully incorporated, and whether the construction and operation of its proposed railroad are acts beyond the power of its corporate charter, are such as can be raised only in direct proceedings by the State. *Railway Co.* v. *Railroad Co.* 112 Ill. 589; *McAuley* v. *Railroad Co.* 83 id. 348; *Railway Co.* v. *Railway Co.* 105 id. 110; *Henry* v. *Railway Co.* 121 id. 264; *Thomas* v. *Railway Co.* 164 id. 634; *Morrison* v. *Forman,* 177 id. 427; *Eddleman* v. *Traction Co.* 217 id. 409; *Brown* v. *Railway Co.* 125 id. 601; *Hudson* v. *Green Hill Seminary,* 113 id. 618; *Trust Co.* v. *Railroad Co.* 157 id. 641; *Railway Co.* v. *Wright,* 153 id. 307; 1 Clark & Marshall on Private Corp. 226-241; *Smith* v. *Sheeley,* 12 Wall. 358; *County of Macon* v. *Shores,* 97 U. S. 272; *Dallas County* v. *Huedkoper,* 154 id. 654.

The only charter point raised is in regard to termini, the claim being that our stated "places from and to which" are too indefinite. In the following authorities will be found termini stated in the articles of incorporation even less definite than the statement in this case: *Railway Co.* v. *Railroad Co.* 112 Ill. 589; *Lieberman* v. *Railroad Co.* 141 id. 140;

*Railway Co.* v. *Railroad Co.* 149 id. 272; *Railway Co.* v. *Chamberlain,* 84 id. 333; *Dowie* v. *Railway Co.* 214 id. 49.

The railroad company is not required to locate the whole of its right of way before bringing suit to condemn any particular part. It may locate one part of its right of way and condemn for that part before locating other parts. *Railway Co.* v. *Dunbar,* 100 Ill. 110.

The ordinances which are part of appellee's petition show that appellee remains a commercial railroad in its use of Galena street, as defined in the following authorities: *Bond* v. *Pennsylvania Co.* 171 Ill. 508; *Wilder* v. *Traction Co.* 216 id. 493; *Hartshorn* v. *Traction Co.* 210 id. 609.

The right of a railway to lay tracks in a public street is established by statute and by judicial authority. Rev. Stat. chap. 114, sec. 19, clause 5; chap. 24, art. 5, sec. 1, clause 90; *Stetson* v. *Railroad Co.* 75 Ill. 74; *Moses* v. *Chicago,* 29 id. 280; *Moses* v. *Railway Co.* 21 id. 522; *Wiggins Ferry Co.* v. *Railway Co.* 107 id. 450.

But even if the interpretation placed upon the ordinances by appellants' counsel in this court is correct and our use would be that of a street railway upon Galena street, the law is clear that appellee would have the right to appropriate a part of Galena street for such purposes although organized under the general Railroad law. *Doane* v. *Railroad Co.* 165 Ill. 510; *Phelps* v. *Railroad Co.* 166 id. 131; *Strong* v. *Railroad Co.* 166 id. 207; *Cummings* v. *Railroad Co.* 169 id. 33; *Palmer* v. *Railroad Co.* 169 id. 122; *People* v. *Railroad Co.* 178 id. 594; *Knopf* v. *Railroad Co.* 197 id. 212.

Appellants also argue in this connection that appellee has no right to condemn a right of way in a street where it is already devoted to one public purpose. The cases cited above, and particularly the case of *Bond* v. *Pennsylvania Co.* 171 Ill. 508, are sufficient authority for such an appropriation where the intended purpose is a different public purpose. *Wiggins Ferry Co.* v. *Railway Co.* 107 Ill. 450; *Railway Co.* v. *Railway Co.* 87 id. 317.

Mr. JUSTICE VICKERS delivered the opinion of the court:

From the judgment of the city court of the city of Aurora, entered upon a verdict in a proceeding to condemn the right of way for appellee's railroad in Galena street, in said city, where appellants, as abutting owners, owned the fee, and which fixed the compensation to be paid at one cent per lineal foot, separate appeals to this court were taken by the owners of nine different tracts and the appeals have been consolidated.

On the return day of the summons the appellants Edward B. Greene, Robert S. Safford, Fannie V. Cheney, Fred Safford, Henry Cheney, Ernest Russell, Marshall Dunning and William E. Gillette presented their petitions for a change of venue on the ground of the prejudice of the judge against them, respectively. Notices had been given, and the applications were made at the proper time. The petitions were in proper form and complied with the statute regulating changes of venue and were duly verified. Each petition alleged the prejudice of the judge and that the change of venue prayed for could be granted without prejudice to appellee or any other defendant or defendants. The judge overruled the motions and each of the parties making the same excepted. The view expressed by the judge was that a motion for a change of venue could not be entertained until there had first been what he termed a severance. The judge, perhaps, referred to the provision of the statute that the compensation for tracts included in one petition shall be assessed separately by the same or different juries, as the court or judge may direct; but that provision only relates to the case as it stands for trial in the court. The granting of a change of venue to the owners of some of the tracts is provided for by section 9 of the act relating to changes of venue, and a change is to be allowed on the petition of the owners of any parcel if it can be done without prejudice to the other defendants or the petitioner. A change

of venue would itself operate as a severance, and there is nothing whatever in this case from which prejudice to any other property owner could possibly arise. It was never intended that the judge must first direct separate trials in his own court before a change of venue, which must be applied for at the earliest opportunity, can be entertained or granted. Counsel for appellee say that to have granted the change would have been without benefit to any party, but we do not see how that position can be maintained if the change would have secured an unprejudiced judge. In the case of *Eddleman* v. *Union County Traction and Power Co.* 217 Ill. 409, it was fully recognized that under the proviso of section 9 it is not necessary that all the defendants should join, and it was held that a change of venue was properly denied because Dora E. Eddleman, one of the petitioners, did not swear to the petition.

It is also urged that this error in denying a change of venue was waived by the defendants going to trial without protesting, and counsel cite the case of *DuQuoin Water-Works Co.* v. *Parks,* 207 Ill. 46, as supporting that claim. That case and other like cases have no relevancy to this question. There a change of venue had been granted and the venue changed to another judge. Two years afterward the judge who had been disqualified heard the cause and the defendants failed to call his attention to the disqualification. In such cases it has been considered that a judge might overlook or not recall the fact, and it is the duty of a party affected by the disqualification to call attention to it. In this case the court overruled the motions and ordered the parties to proceed at once with the trial, and they excepted. The court denied the motions under an erroneous view of the law, and as the denial was prejudicial error, it is ground for a reversal as to the appellants who applied for a change of venue.

Appellants, with the exception of M. V. Bennett, then filed separate motions in writing to dismiss the petition for

reasons therein stated. It was agreed that the hearing upon the motion of Edward B. Greene should be postponed until after verdict and be then heard the same as if it were heard before the jury were empaneled. After the jury trial that motion was taken up for consideration pursuant to said agreement, and appellee offered in evidence its articles of incorporation, the ordinance of the city of Aurora granting it a license to occupy the street, and other evidence. Greene then attempted to attack the validity of the ordinance, and the court held that he could not do that. Greene excepted to the ruling, and the record shows nothing further respecting the motions. The court never ruled on the motion of Greene, and as to that motion there was neither decision nor exception and there is nothing to be considered.

The other motions to dismiss the petition were heard as a preliminary question before the empaneling of a jury, and they were denied. The denial of the motions is assigned as error, but counsel for appellee contend that the question was not properly saved in the record by an exception to the ruling. It is true that the question was not saved by the motions for new trials or in arrest of judgment and exceptions thereto. (*Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370; *Cella* v. *Chicago and Western Indiana Railroad Co.* 217 id. 326.) The record shows that when counsel for appellants stated that they would enter motions to dismiss, the clerk asked if he should file the motions, and the court said: "Yes; the motion will be overruled." That was before the motions had been heard or the court had been advised of the grounds on which they were made, and no exception was taken. Appellee, however, then proceeded to offer evidence in support of its right to condemn, and the parties moving to dismiss offered evidence in support of their motions. After hearing much evidence the court overruled the motions, and each of the appellants making motions excepted. The ground of the claim that the question whether appellee had a right

to condemn the property was not saved is, that the judge, in his remarks in overruling the motions, said that the validity of the charter and ordinance was not involved, and treated the motions as motions to dismiss on account of a failure to attempt to agree with the owners. It is somewhat difficult to determine what the court had in mind at the time, since, following the statement, the court proceeded to discuss the question of the sufficiency of the articles of incorporation as to the feature concerning which they were attacked and thought them sufficient, but held that the question could only be raised by *quo warranto.* The statement of the court was, in substance, that the only question involved was the attempt to agree, because the other questions could not be raised, and it is quite clear that the parties making the motions did not concur in that view. The assignment of error is based on proper exceptions.

As to the motion to dismiss the petition, the right of appellee to exercise the power of eminent domain and to take for its use the property described in the petition was disputed on various grounds. The right to construct and operate its railroad longitudinally on Galena street was disputed, and it was insisted that its articles of incorporation were not sufficient; that the description of the termini of the road did not comply with the law, and that while it was incorporated as a commercial railroad it was attempting to construct a system of street railways in the city of Aurora. On the hearing of the motions much evidence which was wholly immaterial was introduced by appellee, intended to show the motives actuating appellants in defending the condemnation proceeding and questioning its right to condemn their property. That evidence need not be noticed, and the sufficiency of the evidence offered to show an attempt to agree with the owners is not now questioned. The evidence on the material question consisted of the articles of incorporation of the appellee, which, omitting the statements of the names and residences of persons forming

the corporation, the names of the board of directors, and the signatures, are as follows:

"Articles of Incorporation of the Aurora Railways Company:

"*First*—The name of this corporation shall be 'The Aurora Railways Company.'

"*Second*—It is proposed to construct the said railroad from and between points in the city of Aurora, Kane county, Illinois, to points outside of said city and adjacent thereto, connecting with lines of its railroad running around said city.

"*Third*—The principal business office of this corporation shall be established and maintained at Aurora, Illinois.

"*Fourth*—The time of the commencement of this corporation shall be November 12, 1906, and continue in force for fifty years.

"*Fifth*—The amount of the capital stock of this corporation shall be $300,000, divided into shares of $100 each."

Also the ordinance of the city of Aurora permitting the construction and operation of the railroad upon Galena street, in the city of Aurora, from May to River street, and the testimony of the president of appellee. He testified that appellee had not, at the time the articles of incorporation were prepared nor at the time of the trial, any lines of railroad running around the city of Aurora. This testimony, in connection with the articles of incorporation, which do not provide for building any lines running around the city of Aurora, shows that such lines had neither an actual nor potential existence.

It is first contended that appellee had no power to exercise the right of eminent domain and take the property of appellants for the use of its railroad because Galena street is already devoted to a public use, and to construct the railroad longitudinally in the street would be to devote the property, in whole or in part, to a different public use than the one to which it is now devoted. It is settled that where land is devoted to a public use it cannot be taken, by con-

demnation, for another public use unless the legislature, in express terms or by necessary implication, has authorized it to be so taken. (*Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District,* 218 Ill. 286.) Appellee is organized under the general act for the incorporation of railroads, (Laws of 1891, p. 184,) and it is a general commercial railroad corporation, which has no right to appropriate or use a street when not authorized by legislative grant; but the fifth paragraph of section 19 of that act provides that a corporation organized under it may construct its railroad along or upon any street upon conditions therein stated, provided it shall not be done without the consent of the municipal authorities. The act authorizes the construction of a railroad upon a street in a city if the corporate authorities assent thereto. The ninetieth paragraph of section 6 of the act for the incorporation of cities and villages, (Laws of 1871-72, p. 218,) fixes the conditions upon which the city council may grant the right to lay down railroad tracks in a street by requiring a petition of owners of land representing certain frontage on the street, and the right of cities to grant licenses for that purpose where the public is not excluded from the street has been recognized in many cases. (*Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510; *Bond* v. *Pennsylvania Co.* 171 id. 508; *Knopf* v. *Lake Street Elevated Railroad Co.* 197 id. 212.) The city of Aurora granted to appellee the right to lay down its railroad tracks in Galena street, and, so far as the question now being considered is concerned, the court did not err in denying the motion.

Another point made by counsel for appellants is, that the appellee, being organized under the general Railroad act as a commercial railroad, cannot construct and operate a railroad upon Galena street carrying only passengers, baggage and express, as provided by the ordinance. It is insisted that only such companies as are organized under the general Incorporation act or the Horse and Dummy act can

operate such a railway line in the street of a city, and that
the city of Aurora could no more confer upon appellee the
power to construct and operate a railroad, as provided in
the ordinance, upon Galena street, than it could confer such
a power upon an individual or manufacturing corporation.
It is true that there is a clear and well recognized distinc-
tion between commercial railroads and street railroads. A
street railroad is constructed on a street for the purpose
of conveying passengers and to accommodate street travel,
making frequent stops to take on and let off passengers and
without regular stations. It conforms to the grade of the
street and its fundamental purpose is to accommodate local
street travel. (*Harvey* v. *Aurora and Geneva Railway Co.*
174 Ill. 295; *Dewey* v. *Chicago and Milwaukee Electric
Railway Co.* 184 id. 426.) To incorporate a street railway
corporation all that is necessary is to make the statement
required by the Incorporation act, clearly and definitely stat-
ing the object of the corporation, and it usually covers the
streets of a city with a system of tracks. In *Wiggins Ferry
Co.* v. *East St. Louis Union Railway Co.* 107 Ill. 450, street
railways were regarded as a distinct class of roads, and it
was considered a matter of grave doubt whether the act
concerning railroads and warehouses had any application to
them. It was said to be extremely questionable whether
street railway companies could be organized at all except
under chapter 32 of the Revised Statutes, entitled "Corpora-
tions," which is the act for the formation of corporations
generally. Many street railway corporations have been or-
ganized under that general Incorporation act, and the pres-
ent statute in regard to street railroads (Laws of 1899,
p. 331,) does not relate to commercial railroads. While a
street railroad company may be incorporated without de-
fining the route or termini and its lines may cover a system
of streets, the act for the incorporation of a commercial
railroad requires the articles to contain the places from and
to which it is intended to construct the proposed railway.

It contemplates only a single line of railroad between fixed termini, and it is quite clear that the legislature never intended that a commercial railroad corporation should be formed for the mere purpose of constructing and operating street railways. To specify a system of such railways in a city in the articles of incorporation would not be a compliance with the act. In *Chicago and Southern Traction Co.* v. *Flaherty,* 222 Ill. 67, it was considered scarcely a doubtful question whether the same corporation could be both a street railroad corporation and a commercial railroad corporation, and we think it perfectly clear that it cannot. At the same time, it does not follow that a commercial railroad corporation lawfully occupying a street for the line of its railroad must haul freight through the street. It would be an absurd construction of the legislative intent to say that a commercial railroad, when it enters or passes through a city or village, must necessarily haul its freight through the street. We recognized a distinction in that respect as to terminal facilities within or in the vicinity of a city, in the case of *Litchfield and Madison Railway Co.* v. *People,* 222 Ill. 242. Interurban railways, which have generally been incorporated under the general Railroad act but which are largely devoted to the carriage of passengers, would fail of their usefulness if they were not permitted to make such arrangements with cities, villages and towns as would enable them to carry passengers, baggage and express on the streets without carrying freight. Such a road may enter or pass through a city, and the right to lay the tracks in streets may be granted subject to the conditions agreed upon, and the corporate authorities may limit the use of a street to the carriage of passengers, express and baggage. The corporate authorities may consent to the use of a street upon such terms as they see fit to impose, and if appellee were otherwise authorized to exercise the power of eminent domain, the fact that it does not carry freight but is only authorized to carry passengers, express and baggage in Ga-

lena street, and is to stop at the street corners, does not prevent it from condemning property.

The principal point made in the motions to dismiss and now mainly relied upon by appellants is, that the law has not vested appellee with the power of eminent domain to take the property of the abutting owners on Galena street by reason of the nature of its articles of incorporation. The sovereign power of eminent domain rests in the State, and is subject, under the constitution, to only two conditions: First, that the use to which private property is to be devoted shall be a public one; and second, that just compensation shall be made to the owner for the property taken. The State may exercise the power or delegate it to a corporation, but the power lies dormant until it is brought into action by legislative enactment, and if a corporation seeks to exercise the power it must be able to point to a statute conferring it in express terms. The taking of private property against the will of the owner is in derogation of the property rights of the citizen, and the authority must not only be conferred by statute in express language, but the use for which the property is taken must be clearly within the object designated by the statute. The statute must be strictly construed in favor of the property owner and doubts must be solved adversely to the claim of right to exercise the power. Unless both the letter and the spirit of the statute confer the power it cannot be exercised, and if the words of the grant are doubtful they are to be taken most strongly against the grantee. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 449; *Reed* v. *Ohio and Mississippi Railway Co.* 126 id. 48; *Goddard* v. *Chicago and Northwestern Railway Co.* 202 id. 362.) If the proposed use is a public one, as it undoubtedly is in this case, the question of necessity or expediency is to be determined by the legislature, and not the courts. Turning to the legislative enactment to learn what authority is conferred upon railroad corporations, we find that by the act providing for

the exercise of eminent domain (Laws of 1871-72, p. 402,) any corporation which has the right to construct or maintain any railroad may take property for the use of its road without the owner's consent and take the proceedings for that purpose specified in the act.

The question then is whether appellee, on the hearing of the motions to dismiss, established its right to construct this railroad in Galena street. Appellee insists that the courts have no right to determine that question, and that it can only be raised by a direct proceeding in the nature of a *quo warranto* at the suit of the people. Manifestly that is not true, since the right to build the railroad is a condition precedent, by the terms of the statute, to the taking of the property. It is true that the question whether there was any irregularity in the organization of appellee which would prevent it from being a corporation *de jure* cannot be considered. Such questions cannot be raised collaterally, and can only be brought into issue in a direct proceeding by information in the nature of a *quo warranto*. If appellee is a *de facto* corporation of such a character as might lawfully build the railroad in question it can maintain the proceeding. It was conceded in the argument at the bar as well as in the brief for appellants that the appellee is a *de facto* corporation for some limited purpose, not including the building of this road, such as to employ attorneys and take property by gift or purchase, but it was strenuously denied that it was a corporation of such a character as the law authorizes to build the road in question. Perhaps the concession was not really an admission of anything, in the true meaning of the words *"de facto* corporation" used by the counsel. It is essential to the existence of a corporation *de facto* that four conditions should exist: First, a valid law under which a corporation with the powers assumed might exist; second, a *bona fide* attempt to organize as a corporation under that law; third, a colorable or apparent compliance with the requirements of the law; fourth, user

of the corporation powers. It seems that if the general Railroad law, under which the appellee was organized, did not give it the right to build the road in question it could hardly be a *de facto* corporation for the purpose of employing attorneys or any other purpose. The question what constitutes a *de facto* corporation was very fully and thoroughly considered in the case of *American Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 Ill. 641, where it was held that the rule that the corporate existence cannot be questioned collaterally does not go to the extent of precluding strangers from showing that there was no law authorizing the corporation with the powers assumed, and that a corporation *de facto* could only exist under authority of law sanctioning such a corporation *de jure*. The court there quoted from and endorsed cases holding that if there is no law under which the power assumed by the corporation might lawfully be created, the mere fact of assuming such power does not constitute a corporation *de facto;* that a body which cannot become a corporation *de jure* cannot become a corporation *de facto;* that if a corporation be acting under legislative sanction and color of law its corporate character cannot be questioned collaterally, but that if there is no law under which the power assumed by the corporation might lawfully be created, the mere fact of assuming such power does not constitute the persons a corporation *de facto*. It was held that the supposed corporation was without capacity to make a contract, and that the right of way contracts and trust deed were invalid. An individual cannot question the legal existence of a *de facto* corporation or raise the question whether it has violated the law, (*Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 Ill. 634,) but the question whether there is any law under which it could exercise the powers assumed is open to question at all times when it attempts to exercise such powers.

Perhaps, however, it is of little consequence whether the question raised by the motions be regarded as disputing the character of appellee as a *de facto* corporation or as disputing the exercise of the powers assumed, since the question is equally open to judicial investigation. The question under what conditions the power of eminent domain may be exercised is purely legislative, but it is for the courts to decide whether the statutory conditions authorizing the exercise of the power exist in the particular case. Accordingly it has been held that the court might determine whether the route and termini of a road had been so approved by the legislature as to authorize the corporation to take private property for public use; (*Gillinwater* v. *Mississippi and Atlantic Railroad Co.* 13 Ill. 1;) whether the corporation has such authority to construct its railroad within a city as to confer power to condemn property for the same; (*McAuley* v. *Columbus, Chicago and Indiana Central Railroad Co.* 83 Ill. 348;) whether the terminus of a railroad has been fixed so as to authorize the company to proceed to condemn land; (*Chicago, Burlington and Quincy Railroad Co.* v. *Chamberlain,* 84 Ill. 333;) whether a railroad company can condemn land for an independent branch road; (*South Chicago Railroad Co.* v. *Dix,* 109 Ill. 237;) whether a corporation can exercise the right of eminent domain to build a spur road or track to brick works as a feeder; (*Chicago and Eastern Illinois Railway Co.* v. *Wiltse, supra,* where many authorities were cited;) and whether a railroad company can exercise the right to condemn property for a parallel and competing line. (*Illinois State Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 Ill. 419.) In *O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 157, it was found that the purpose for which the land was sought to be taken was not within the legislative grant and was therefore unauthorized. Those cases conclusively settle the rule that the questions whether the power has been delegated to the cor-

poration, and whether the uses and purposes for which it is sought to be exercised fall within the legislative grant, are proper subjects for judicial determination.

As before stated, the act under which appellee is organized authorizes incorporation for the purpose of building a line of railroad, with fixed termini between places named in the articles of incorporation. It is neither designed for nor adapted to the construction and operation of a system of street railways within a city. In this case the articles of incorporation state the routes and termini of the road, as follows: "It is proposed to construct the said railroad from and between points in the city of Aurora, Kane county, Illinois, to points outside of said city and adjacent thereto, connecting with lines of its railroad running around said city." Counsel for appellee say that the adjacent lines or points outside of the city are lines or points lying against or joined to the city, and counsel on both sides recognize the scheme as one for building some sort of a belt line or lines adjoining the city, in the manner of a wheel, with lines or spokes within the city radiating from any number of points within the city. Counsel for appellee say that "points outside of said city and adjacent thereto" is more definite than "a point on the Indiana line," which they say was held good in *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 Ill. 140. There was no question in that case about the terminus, but the contest was whether the petitioner had tried to agree with the owner, and that question was waived by going to trial on the merits. The question whether the articles authorized the building of the elevated road which the corporation was attempting to build, or only a surface road, was not only considered but was regarded as one open to the defendant if not waived. That case, in effect, holds that the question whether the articles of incorporation authorize the proceeding is open to investigation. In this case there is no single terminus mentioned at either end of the line or lines, but numerous termini, both within and without

the city.   Undoubtedly there should be great latitude allowed in' naming the termini of a railroad.   If very great particularity were required, difficulties would be put in the way of obtaining the right of way, so that a description from one city to another would be sufficient.   In special charters granted by the legislature the termini have been very indefinite, and such acts have also authorized location, re-location and changing lines, but such instances have no weight in this matter.   Where a railroad is incorporated with one terminus at a city it is sufficient, and the charter would authorize fixing the terminus at any point in the city. (*Chicago and Northwestern Railway Co. v. Chicago and Evanston Railroad Co.* 112 Ill. 589.)   But here the articles provide for an indefinite number of lines from points within the city of Aurora to points outside.   If there were, in fact, lines outside of the city and running around it, the power assumed by the articles would not be exhausted by building this line on Galena street or any other number of lines, but they would authorize building a whole system of street railways.   As the lines are to connect with belt lines adjoining the city they would be wholly within the city. The general act under which appellee is organized does not authorize anything of that kind.

It was proved that the appellee had no lines of railroad running around the city, and it did not show that it had even any authority to build such lines or any had been located which could possibly form a terminus for the line on Galena street or any other line.   The proof showed that there was no terminus at one end of the line.   The right to condemn property is made by the statute to depend upon the right to construct the railroad, and as the law does not authorize a corporation with the powers assumed by appellee it had no right to condemn.   As we have said, an interurban road organized under the general act may enter a city or pass through it, and if it shall be permitted to occupy a street it may be required to carry only passengers,

mail or baggage on the street, or be otherwise limited as to carrying freight or the location of its freight depot; but the legislature never intended that a system of street railways should be built within a city by a commercial railroad, even if the termini in appellee's articles of incorporation could be held sufficient. The court therefore erred in overruling the motion to dismiss. This error necessitates a reversal of the judgment in all of the appeals except those of M. V. Bennett and Edward B. Greene. The error in denying a change of venue requires a reversal in the case of Edward B. Greene and those petitioning for a change. Bennett neither moved to dismiss nor asked for a change of venue, and although he assigns error on the trial we find none which would require a reversal.

The judgment as to M. V. Bennett is affirmed, and he will pay the costs occasioned by his appeal. The judgments against the other appellants are reversed, and appellee will pay the costs of their appeals.     *Judgments reversed.*