THE ALTON AND SOUTHERN RAILROAD, Appellee, *vs.* THE
VANDALIA RAILROAD COMPANY, Appellant.

*Opinion filed February 16, 1916.*

1. EMINENT DOMAIN—*when statement of termini in articles of
incorporation is sufficient.* .A statement in the articles of incorpo-
ration of a railroad company that the places from and to which the
railroad is to be constructed are "from a point at or near the east-
erly banks of the Mississippi river in the county of St. Clair, State
of Illinois, opposite the city of St. Louis, Missouri, around and
through the city of East St. Louis, Illinois, to a point at or near
the easterly banks of the Mississippi river in Madison county, Illi-
nois," is sufficient to enable the company to condemn land.

2. SAME—*plans and specifications are not indispensable in con-
demnation proceeding.* In a proceeding by one railroad company
to condemn a right of way to cross the tracks of another company
plans and specifications are not indispensable, where the petition
contains an order of the State Public Utilities Commission speci-
fying the details of the crossing with such particularity that no
further information would be gained by requiring plans and speci-
fications to be filed.

3. SAME—*when question of effort to agree on compensation is
waived.* If the defendant to a condemnation proceeding files a
cross-petition for damages and there is a contest on the merits of
the case, the question whether there was an effort made to agree
upon compensation prior to the filing of the petition is waived.

4. SAME—*when denial of challenge to the array is proper.* It
is not error to deny the defendant's challenge to the array in a
condemnation case and in submitting the case to a jury selected
from the regular panel for the term, where the case, though origi-
nally set for trial in vacation, was continued, without objection by
defendant, to a regular term, and where the challenge to the ar-
ray is not supported by affidavit and there is no evidence of any
irregularity in drawing the jury.

5. SAME—*when it is not error to admit stipulation in evidence.*
In a proceeding by one railroad company to condemn a right of
way for crossing another railroad, it is not error to admit in evi-
dence a stipulation that the petitioner will install and maintain an
interlocking plant of approved design to be submitted to the State
Public Utilities Commission for approval, where such stipulation
is merely an agreement by the petitioner to do what said commis-
sion has ordered to be done and has power to require done.

6. SAME—*when a stipulation need not be incorporated in judgment.* A stipulation by the petitioner in a condemnation case to do what the State Public Utilities Commission has ordered it to do is binding upon the petitioner and can be enforced whether or not it is incorporated in the condemnation judgment.

7. SAME—*when the rejection of evidence of an alleged expert is proper.* Evidence of a witness offered as an expert upon the question of damages to a railroad company by the crossing of its railroad by another company, to the effect that there would be an added risk, and consequent depreciation in the value of the capital stock of the defendant company, in serving the public against the modern policy of throwing every safeguard around human life, is properly rejected.

8. SAME—*damages resulting from stopping trains at crossing cannot be recovered.* In a proceeding by one railroad company to condemn a right of way to cross the tracks of another company the defendant is not entitled to recover damages resulting from obedience to the statute requiring trains to be stopped at crossings of other railroads.

9. SAME—*what questions as to damages are improper.* Questions asked of an expert witness in a proceeding by one railroad company to condemn a right of way across another railroad are improper which will permit the witness to include in his answer elements of damage to the defendant company which are within the realm of conjecture and speculation and also elements for which the defendant is not entitled to recover damages. (*Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 100 Ill. 21, distinguished.)

APPEAL from the County Court of St. Clair county; the Hon. JOSEPH MESSICK, Judge, presiding.

FORDYCE, HOLLIDAY & WHITE, and WHITNEL & BROWNING, (J. G. WILLIAMS, of counsel,) for appellant.

JOHN L. FLANNIGEN, and M. W. SCHAEFER, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from the judgment of the county court of St. Clair county awarding damages to appellant in a condemnation proceeding under the Eminent Domain act in-

stituted by appellee for the purpose of condemning a crossing over the right of way and railroad tracks of appellant.

In 1913 the appellee filed its petition with the Railroad and Warehouse Commission of the State of Illinois seeking permission to cross at the same grade the railroad right of way and tracks of appellant, and also the right of way and tracks of the Baltimore and Ohio Southwestern Railroad Company about 120 feet south of the railroad of appellant. Appellant and the Baltimore and Ohio Southwestern Railroad Company opposed the crossing being made at grade and resisted the petition. The cause was heard by the State Public Utilities Commission of Illinois, which succeeded the Railroad and Warehouse Commission. On June 12, 1914, the Public Utilities Commission entered an order authorizing appellee to cross the railroad of appellant at grade, the right of way to be first obtained in accordance with the Eminent Domain act or otherwise, at a point described in the order, and that the appellee in this suit install an interlocking plant of approved design at said crossing, to be submitted to the appellant company and to the commission for examination and approval, appellee to bear the entire expense of the construction of said crossing and interlocking plant and the cost of the installation and maintenance thereof. The order further provided that appellant, after agreement with appellee or after appellee had complied with the requirements of the Eminent Domain act with respect to this matter, should raise its grade at the point of crossing approximately two feet, the necessary changes in approaches thereto along appellant's tracks and the distance along appellant's road in which said rise of grade should be made to be determined by agreement between appellant and appellee if possible, and if not, such matters were to be determined by the commission at another hearing. A similar order was made as to the interlocking plant to be installed at the crossing of the Baltimore and Ohio Southwestern railroad, and it was stated in the order that no order is

made concerning the respective shares of the Alton and
Southern, the Baltimore and Ohio Southwestern and the
Vandalia Railroad Companies in the expense and adminis-
tration of the operation of said interlocking plants, as it
was expected that the respective shares of the three rail-
roads in these matters might be determined by agreement
among them.   The commission retained jurisdiction of the
subject matter and the parties hereto for the purpose of
making any order regarding the respective shares in the
operation of the interlocking plants which may be required
or for the purpose of making any further order that may
be necessary herein.   Appellant appealed from the decision
of the Public Utilities Commission allowing such crossing
at grade, to the Sangamon county circuit court, where the
order of the commission was affirmed.   The appellant then
appealed to this court, which at the April term, 1915, af-
firmed the decisions of the circuit court of Sangamon county
and the Public Utilities Commission.   (*Alton and Southern
Railroad* v. *Vandalia Railroad Co.* 268 Ill. 68.)   The par-
ties were apparently not able to agree upon the cost and
manner of construction of the grade to be constructed by
appellant, and the approaches thereto, at the crossing of
the two roads, and after the decision of the Supreme Court
appellee filed its petition with the Public Utilities Commis-
sion to have said commission by its order fix such grade
and approaches, and the commission, after a hearing upon
this petition, on June 17, 1915, rendered its decision order-
ing that appellant's tracks be raised approximately two feet
at the point of crossing, and also fixing the percentage of
grade in the approaches thereto along appellant's tracks on
each side of the crossing.

This condemnation suit was started in August, 1914,
after the order of the Public Utilities Commission granting
appellee the right to a grade crossing over appellant's road
was made.   The case came on for hearing in the county
court in August, 1914, and appellant filed a motion to dis-

271 − 36

miss the petition, which was overruled by the court. Appellant then filed a general and special demurrer, which were also overruled, and it thereafter filed a motion that appellee be required to produce plans and specifications for its proposed crossing. The county court held that it could not advisedly proceed with the hearing until the Public Utilities Commission had determined the exact character and height of the grade and approaches at the crossing, and continued the case until such order should be made, with the further order that the findings and order of the Public Utilities Commission fixing the height which appellant's railroad should be raised and the extent of the fill on each side of the proposed crossing should be and stand as the plans and specifications required in appellant's said motion. The cause was continued, from time to time, until after the affirmance of the order of the Public Utilities Commission permitting such grade crossing by this court. After the order of June 17, 1915, of the Public Utilities Commission fixing the grade and approaches, a copy of said order, together with a plat and the original order of the commission, were filed in the county court as constituting the plans and specifications for said crossing. When the cause came on to be heard in the county court, appellant filed its motion to dismiss the petition, which was denied, and it thereupon asked leave to re-file the demurrers which it had previously filed to the petition in October, 1913, but the court having already disposed of the matter refused leave to re-file said demurrers. Appellant then filed its motion to require appellee to file maps, profiles, etc., of the crossing, which was overruled. It then filed a further motion to strike from the files a copy of the order of the Public Utilities Commission, which had been filed by appellee as the plans and specifications for such crossing, which motion was overruled. Appellant then filed its cross-petition claiming damages to property not sought to be taken, to which the appellee filed general and special demurrers, which were overruled by the

court and appellee answered the cross-petition. Appellant then filed a motion to quash the panel of jurors, which was overruled. A jury was empaneled, evidence was heard, the jury were instructed, and returned a verdict finding that appellant was entitled to $125 for land taken and $9000 · for damages for raising its tracks and making approaches to correspond with the directions and specifications as to such work contained in the order of the Public Utilities Commission of June 17, 1915. Motions for a new trial and in arrest of judgment were, respectively, overruled by the court and judgment was entered on the verdict, from which judgment this appeal is prayed.

Numerous causes of error have been assigned on the record, all of which have been considered and will be discussed in their order.

It is first claimed that the articles of incorporation of the appellee fail to state, in compliance with the law, the places from which and to which it was proposed to construct said road. In the articles of incorporation of appellee it is stated that the "places from and to which it intended to construct said railroad are as follows: From a point at or near the easterly banks of the Mississippi river in the county of St. Clair, State of Illinois, opposite the city of St. Louis, Missouri, around and through the city of East St. Louis, Illinois, to a point at or near the easterly banks of the Mississippi river in Madison county, Illinois." It has been held that great latitude should be allowed in naming the termini of a railroad. If very great particularity were required, difficulties would be put in the way of obtaining a right of way, so that a description from one city to another would be sufficient. (*Gillette* v. *Aurora Railway Co.* 228 Ill. 261.) In *Alton and Southern Railroad* v. *Vandalia Railroad Co. supra,* the situation of the parties and the location of appellee's railroad as a belt line with respect to the road of appellant and other railroads and belt lines is fully set out, and no question was there raised as to

the articles of incorporation of appellee and the termini of its road.

It is also contended that no failure to agree had been shown; that no plats, plans, specifications or maps were introduced, and no proof showing the location of the line and property sought to be taken. Again referring to the case of *Alton and Southern Railroad* v. *Vandalia Railroad Co. supra,* on page 70 of the opinion the *locus in quo* of the crossing and the situation of the respective rights of way of appellant and appellee are fully set out, and also the decision and order of the Public Utilities Commission which was sustained by the circuit court, and what was to be done by appellee by way of installing an interlocking plant with the approval and under the direction of the Public Utilities Commission. It is not necessary to repeat them here, but we deem it sufficient to say that the location of appellee's railroad as having now been built up to the right of way of appellant, and the manner in which it was to cross the railroad of appellant, are set out with such particularity that they cannot fail to be fully understood by both parties.

The order of the Public Utilities Commission of June 17, 1915, which by order of the trial court was submitted in lieu of profiles and specifications, is full and complete. The crossing is to be at grade, and it will be necessary for appellant to raise its tracks approximately two feet for 500 feet on each side of the crossing, which will bring the tracks of appellant up to the same grade as the tracks of the Baltimore and Ohio Southwestern railroad immediately to the south of appellant's tracks, which appellee's railroad will also cross. The order provides that eastward from the point of intersection the rise of the tracks of the Vandalia Railroad Company of approximately two feet shall be carried level for a distance of 500 feet, thence descend on a 0.25 of one per cent grade for about 1600 feet to meet the present grade of the track of the Vandalia Railroad Com-

pany. Westward from the point of intersection the rise of the tracks of the Vandalia Railroad Company of approximately two feet shall be carried level for a distance of 500 feet, thence on a 0.10 of one per cent grade for a distance of about 2900 feet to meet the present grade of the track of the Vandalia Railroad Company. Nothing would have been added to the information possessed by appellant by plats and profiles other than was contained in the order of the Public Utilities Commission, and the entire situation and character of the work necessary to make the crossing as ordered seem to have been fully understood by the parties and by the court and jury. It has been held that plans and specifications are not indispensable in condemnation proceedings but may be required if there is any necessity therefor. (*Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589; *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 id. 508.) A plat was offered in evidence and appears in the record. It also appears that due proof was made of the location of appellee's road by an engineer thereof.

It is also urged that the order of the county court directing that the order of the Public Utilities Commission as to the grade and manner of crossing, etc., stand as the plans and specifications is erroneous. This was an order by the proper authority, with which order the appellee and appellant would have to comply. We think the ruling of the court in that regard was proper under the circumstances.

It is unnecessary to consider the contention of appellant that the present suit is premature because the order of the Public Utilities Commission of June 17, 1915, has been appealed from, as stated by counsel for the appellant in their brief. The appeal in the case at bar must be decided on the record. After the order of the Public Utilities Commission was entered it would stand until reversed, and the appellee could start its condemnation suit without anticipating a reversal of such order.

It is also urged that the court erred in overruling the motion of appellant to dismiss the petition, in not sustaining the demurrers and in denying leave to re-file the demurrers. The motion to dismiss and the demurrers were based principally upon the insufficiency of the articles of incorporation of appellee and its right to condemn. It is very evident that the parties were unable to agree as to the damages in this case. Where from the contest and acts of the parties it is evident that the parties cannot agree as to the compensation to be paid for land sought to be condemned for a right of way the judgment will not be reversed because no direct testimony was offered to show such inability to agree. (*Ward* v. *Minnesota and Northwestern Railroad Co.* 119 Ill. 287.) Appellant filed a cross-petition in this case asking for damages for land not taken, and there was a contest on the merits. This is a waiver of any question of an effort to agree upon compensation before filing a petition. *West Skokie Drainage District* v. *Dawson,* 243 Ill. 175; *Schuster* v. *Sanitary District,* 177 id. 626; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 id. 272.

It is also objected that the court erred in not sustaining a challenge to the array and in submitting the case to a jury selected from the regular panel of the term of court at which the case was tried. It appears that the case was originally set for trial in vacation, but without objection on the part of the appellant the cause was continued to a regular term of court and from term to term until it was finally tried. The motion challenging the array is not supported by affidavit and there is no evidence of any irregularity in drawing the jury, consequently there is nothing on which the court could sustain the motion, as appears from the record in this case. *Borrelli* v. *People,* 164 Ill. 549.

It is also urged that the court erred in admitting a stipulation of the attorneys for appellee. This stipulation was to the effect that the appellee would install an interlocking

plant of approved design, the plans for the same to be submitted to the appellant company for examination and to the State Public Utilities Commission for examination and approval, and to be installed and maintained by appellee when said commission should approve the same, at the entire expense of appellee. While it is true that an attorney for a petitioner in a condemnation proceeding cannot bind the petitioner by his agreement or stipulation as to the plan of constructing a road in the absence of special authority, the stipulation in this case was an agreement to perform what the Public Utilities Commission had ordered to be done, as was pointed out in *Alton and Southern Railroad v. Vandalia Railroad Co. supra.* What the appellee stipulated to do is only what it is required by law to do as a condition of crossing appellant's road, (Hurd's Stat. 1913, chap. 114, par. 210, p. 1980,) so that there can be no question but that the stipulation would have to be performed under the direction of the Public Utilities Commission. Under the circumstances of this case it was a binding and enforcible stipulation, and it will have to be carried out whether incorporated in the judgment or not. It would not be necessary to incorporate the stipulation in the judgment, as the authority whose duty it is to enforce such matters (the Public Utilities Commission) can be depended upon to see that it is performed.

Error is assigned in the rejection of evidence offered by appellant. A civil engineer in the employ of appellee and the division superintendent of the appellant railroad company each testified on the trial, and substantially agreed that the cost or amount of damages to be sustained by appellant in raising its tracks and road-bed and constructing the approaches and grade as provided in the last order of the Public Utilities Commission, and in restoring the road-bed, etc., to the same condition it was then in, would be $9000, and this amount was allowed by the jury. Appellant offered a witness who stated that his business was that

of valuation engineer and lecturer on economics of public
utilities; that he had been for the last two years an ex-
aminer of securities for the St. Louis Trust Company in
connection with the valuation department, and that he was
acquainted with the securities of railroads and utilities.
This witness was asked (referring to the Vandalia railroad
extending from Indianapolis, Indiana, to East St. Louis,
Illinois,) what would be the damage, if any, to the prop-
erty of the said railroad company by reason of the con-
struction, maintenance and operation of the proposed cross-
ing by appellee, leaving out the question of the actual cost
of raising the tracks of the Vandalia Railroad Company to
the grade established by the Alton and Southern Railroad,
and also leaving out the damages arising from stopping and
starting trains at such crossing in compliance with the Illi-
nois law as to stopping and starting at crossings. An ob-
jection was sustained to this question, and the witness was
asked if his experience and business in connection with rail-
roads and railroad securities enabled him to have an opin-
ion as to the effect upon the values of such properties caused
by the construction of a crossing by another railroad over
and across the Vandalia railroad at the place in question,
which was objected to. The witness replied that he had
examined the crossing and was familiar with the character
of the operation of appellant's road; that "the whole ques-
tion comes back to added risk of property of any kind;
you depreciate the value of the capital; there is an added
risk, undoubtedly; not only that, but a depreciation of the
capital; it is serving the public against modern policy,
which is to throw every safeguard around human life."
Counsel for the petitioner objected at this point, and the
further question was asked the witness as to what would
be the damage or depreciation in value, if any, to the prop-
erty of the Vandalia Railroad Company by reason of the
construction and maintenance of the crossing over the two
main-line tracks of the Vandalia railroad, leaving out of

the question the actual cost of raising the tracks of the
Vandalia railroad to the grade established by the Alton and
Southern railroad, and leaving out any damages on account
of the stopping and starting of trains at such crossing in
compliance with the Illinois law requiring stops to be made.
The question was objected to for the reason that the wit-
ness had not shown that he was familiar with the opera-
tion of trains at the crossing or the number of trains op-
erated there, and had stated that the capital of the appellant
company would be affected by reason of the increased risk
by reason of such crossing.   The objection was sustained
for the reason that the witness had not qualified as an ex-
pert, and it was apparent from the questions asked and the
answers of the witness as far as he answered, that he was
testifying to elements of damage which were not proper to
be taken into consideration.   We do not think the court
erred in its ruling.   The witness was not a practical railroad
man and did not base his answer upon his general knowl-
edge of the crossing and its conditions and surroundings,
but apparently upon his general knowledge of the capital
stock and securities of the road and the manner in which
they would be affected by the crossing by another railroad.
In the case of an expert witness his qualification is a ques-
tion for the court.   Jones on Evidence, (2d ed.) sec. 355;
*Bonato* v. *Peabody Coal Co.* 248 Ill. 422.

Another witness called by appellant was a practical rail-
road man and familiar with the situation of the proposed
crossing and no objection was made as to his qualifications.
The question was asked him what the damage to the prop-
erty of the Vandalia Railroad Company would be,—the de-
preciation in its value, if anything,—by reason of the con-
struction, maintenance and operation of the crossing.   This
question was objected to, and the witness was then asked
to state what in his judgment would be the amount, if any,
in dollars, the Vandalia property not taken or sought to
be taken in this proceeding for appellee's use would be

diminished or depreciated on account of the construction, maintenance and operation by the Alton and Southern Railroad of the crossing in question, eliminating the cost of raising the grade of the Vandalia road at that point and the value of the land actually taken for such use, and eliminating the question of the stopping and starting of trains at said crossing, and taking into consideration anything there may be in connection with the operation of such crossing that would hinder and inconvenience and occasion loss or diminish and limit the powers of the Vandalia Railroad Company to transact its business, by decreasing its power to transact such business or by increasing its expense, and all other things, if there be such, which tend to diminish its value, not mentioned in this question as being excluded from consideration. This question was objected to for the reason that the witness could include damages not recoverable by law and allowed him to say what should be recoverable under the law, and an objection was also sustained to a similar question. Counsel for appellee suggested that the witness state the manner in which the property of the Vandalia Railroad Company would be affected by the proposed crossing, to which the witness replied: "The only way to answer it would be to state the manner in which a crossing of that kind does affect the property values. It is an obstruction in the way of clear operation of a railroad. It interferes with the operation, and economically and otherwise decreases the value of the property." The defendant also made a general offer of proof by a number of witnesses that the property of the Vandalia Railroad Company adjoining the place and point in question, its tracks and right of way, will be depreciated and diminished in value,—in its actual fair cash value,—in the sum of $50,000, eliminating from consideration the value of the ground taken, the cost of raising the tracks of the Vandalia Railroad Company, and the damages, if any, occasioned by the stopping

and starting of trains in the operating of said railroad, as required by the statutes of the State of Illinois.

The general objection to this line of testimony was that damages were included which were not properly recoverable. The witnesses might have answered, and answered truthfully, including damages which appellant was not entitled to recover, under its cross-petition, for property not taken. In condemnation proceedings the owner of property sought to be condemned is entitled to recover damages for property taken and is also entitled to damages for property not taken; and this is true where the property of a railroad company is sought to be taken or condemned for a crossing by another railroad or for other public use. The amount of damages that may be recovered for property not taken, of course depends upon the facts and circumstances of each particular case, and if the situation of the parties in the case at bar were such that the property of appellant which is not actually taken and used for the crossing in question would be damaged by reason of such crossing, it would be proper to prove such damages, but the questions asked witnesses should be such that their testimony would show the situation of the parties and the elements of damage sought to be recovered. As stated in the case of *Chicago and Western Indiana Railroad Co.* v. *Englewood Connecting Railway Co.* 115 Ill. 375, relied upon by the appellant, on page 383 of the opinion: "The test given in this case as to whether a particular inconvenience or hindrance resulting from a crossing or other structure should be treated as an element in the assessment of damages is, does the inconvenience or hindrance in question necessarily abridge the owner's capacity, without increasing his expenses, to transact an equal volume of business? If it does it constitutes an element of damages, otherwise it does not unless the value of the property itself is thereby depreciated, in which case that is always to be taken into the account in the assessment of damages." As stated further in the opin-

ion: "Suppose the business of a railway company requires it to use a particular part of its road all the time, so that it could not stop without greatly deranging its business and subjecting it to serious pecuniary losses. Now if, under these circumstances, a new company should be organized and propose to run a number of tracks across that part of the old company's line in constant use, and to conduct such a business on the new road as would occupy the crossing half the time and consequently reduce the capacity of that part of the old company's road just one-half, can it be doubted this would be an invasion of the right of property for which, under the constitution of the State, compensation would have to be made?" On the other hand, it has been held that damages which result from the stopping of trains at a railroad crossing because of the statute requiring such stops to be made cannot be recovered in a condemnation proceeding, as the statute is merely a police regulation and might be repealed at any time. (*Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 Ill. 110; *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* id. 388.) These same cases hold that the law requiring trains to stop at crossings being subject to repeal at any time, the delays, inconveniences and other embarrassments caused by stopping trains that will be experienced by a railroad by reason of another railroad crossing its line are too vague, indefinite and contingent to be an element in the assessment of damages in condemnation proceedings, and that to allow damages on such a claim would violate the rule that damages cannot be allowed on mere conjecture, speculation, fancy or imagination; that they must be real, tangible and proximate. As stated in *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co. supra,* on page 117 of the opinion: "It would therefore be mere matter of conjecture as to what, if any, damages would be sustained by appellants for the delay, inconvenience and trouble pro-

duced by complying with the requirements of the statute. Independent of the statute the same duty would be imposed, and it is too vague and uncertain to be an element of damages.—*Lake Shore and Michigan Southern Railroad Co.* v. *Cincinnati, Sandusky and Cleveland Railroad Co.* 30 Ohio, 604; *Boston Railroad Co.* v. *Old Colony Railroad Co.* 3 Allen, 142; *Old Colony Railroad Co.* v. *Plymouth Railroad Co.* 14 Gray, 155; *Massachusetts Railroad Co.* v. *Boston Railroad Co.* 121 Mass. 124; *Boston Railroad Co.* v. *Old Colony Railroad Co.* 12 Cush. 605."

In the case of *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co. supra,* it is to be inferred from the opinion that the situation of the parties was similar to that of appellant and appellee in the case at bar. Damages were assessed by a jury in that case at $150, for which judgment of condemnation was rendered. As stated in that case: "The point is made, both by the argument and the instructions asked by defendant, that on account of defendant having to cause its trains to be stopped in compliance with the statute there is a reduction in the hauling capacity of defendant to do business at and over the point of such crossing, and hence it should be paid in money a sum sufficient to make good any reduction in the hauling capacity of its engines that may be shown by the evidence. Beyond mere nominal damages it is difficult to adopt any rule for the admeasurement of any actual damages in such cases. It would involve the consideration of so many collateral facts as would make the claim insisted upon shadowy and uncertain." In a separate opinion filed in that case the same conclusion was reached for a somewhat different reason, and it was stated: "If the appellant could claim, as a part of its franchise, that it was entitled to pass its cars from one end of its line to the other without any other hindrances, delays or burdens than those in existence when its charter was granted, then any statute subsequently passed requiring its cars to slacken speed or

stop where before they were not required to slacken speed or stop, or requiring a care and labor not then required, would impair the obligation of the contract evidenced by its charter and be in contravention of section 10, article 1, of the constitution of the United States, and hence void. The opening of new common highways across railroad tracks necessarily increases the care and labor of the railroad companies in order to avoid collisions. Where villages or cities spring up along the lines of railways and their streets are laid out across the railway tracks, the care and labor to avoid collisions is very materially increased, and the speed of trains must, of necessity, be to some extent slackened. In all these cases, if the railroad charter is held to amount to a contract that passage upon the line of its railway shall not be delayed, hindered or burdened, the highways and streets cannot lawfully be laid out until the railroad company is compensated for the additional burden it will thus have to bear; nor can the village or city by ordinance require the speed of trains to be checked where compensation for the attendant loss has not been first provided for. This has never been supposed to be the law here, nor, so far as we know, has it been held to be the law elsewhere. * * * For so much of the right of way and track as is taken or appropriated to use, and for damages, if any are sustained, to right of way and track and fixtures, no one denies the right of recovery. I think where the crossing necessitates the raising or lowering of the grade in order to the operation of the road as efficiently as it was before operated, the expenses of so doing may properly be taxed against the road seeking the condemnation."

What was above said applies to the case at bar. As we have seen, appellant was allowed damages for changing its grade to conform to the grade established at the crossing, and no question is raised about that amount. Undoubtedly

it would be an advantage, and perhaps of great value to appellant, if no railroads, public highways or streets crossed its right of way or were allowed to cross its right of way anywhere, so that it could run its trains the entire length of its road without the danger, delay and hindrance that such crossings necessarily entail to some extent, but such a condition is, in the very nature of things, impossible. Appellant must be held to have accepted its franchise and located its line with the expectation that other roads would be built as public necessities demanded and subject to the right of such other roads to cross its line. The railroad of appellee is an outer belt line, crossing at grade a large number of other railroads which enter East St. Louis. (*Alton and Southern Railroad* v. *Vandalia Railroad Co. supra.*) If the construction of the proposed crossing would cause any damage to the property of appellant which is not taken, or for any reason would necessarily decrease or limit its capacity to do business without decreasing its expenses, or would increase its expenses in transacting the same amount of business except in the manner pointed out, such elements should be considered. As far as we are advised, however, from the record in this case, as to the situation of the parties, nothing of this kind will necessarily occur. In the natural course of events the appellee will run trains over the crossing and appellant will continue to run its trains as before. Some of these trains will run on regular schedules and probably make this crossing at stated times. It is possible and may well be that the time of these trains will be so arranged that there will be no interference with the business of appellant except as it is required to stop its trains at the crossing by reason of the statute requiring such stops to be made, and this cannot be considered as an element of damages. If this statute were repealed the trains would run as before, and there might be no material interference with appellant's business by appellee in the conduct of its road as a belt line serving the appellant and other railroads

entering East St. Louis. It is apparent, therefore, that the evidence which the questions attempted to bring out would be damages that are within the realm of conjecture and are remote and speculative, and, in any event, included elements of damage for which appellant was not entitled to recover, such as the increased risk and danger by reason of such crossing. (*Peoria and Pekin Union Railway Co. v. Peoria and Farmington Railway Co. supra.*) This case is entirely different from that of *Lake Shore and Michigan Southern Railway Co. v. Chicago and Western Indiana Railroad Co.* 100 Ill. 21, where the petitioning company attempted to condemn a right of way for the use of four tracks diagonally across a number of tracks of the defendant and other railroads at a point north of Sixteenth street, in the city of Chicago, and between Sixteenth street and the freight and passenger depots of said railroads, and where the defendant operated several main-line tracks and also switch tracks in connection with another railroad, which tracks were almost constantly in use in making transfers of cars and trains between the several railroads operated within the city of Chicago. An interlocking plant is to be established at the crossing in question which must be approved by the Public Utilities Commission,—the authority which has charge of such matters,—and the expense of operating such plant, if not agreed upon by the parties, is to be determined by said commission, and we cannot anticipate but that such matter will be satisfactorily determined.

Perceiving no error sufficient to justify a reversal, the judgment of the county court of St. Clair county will be affirmed.

*Judgment affirmed.*